In re Raymond HEALIS and Carmella Healis, Debtors.

Bankruptcy No. 1–83–00425.

United States Bankruptcy Court, M.D. Pennsylvania.

June 10, 1985.

**940**

Richard C. Ruben, Harrisburg, Pa., for debtor.

Lawrence G. Frank, Harrisburg, Pa., trustee.

## MEMORANDUM

### OBJECTION TO CLAIM NO. 2

ROBERT J. WOODSIDE, Bankruptcy Judge.

The debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on May 20, 1983; and subsequently, filed a plan of repayment and an amendment to that plan. They began making interim payments to the trustee pursuant to our "Interim Order Confirming Plan." The debtors have subsequently filed an Objection to Claim No. 2, the claim filed by the Internal Revenue Service (IRS). We granted final confirmation of the debtors' plan subject to modification of the plan based on our decision in this matter. The parties agreed to brief the legal issues.

The debtors were delinquent in the payment of federal income taxes for the years 1978, 1980, 1981 and 1982. The IRS has assessed penalties and interest accruing to the date of the debtors' petition. The total amount due and owing on Claim No. 2 was $26,025.90, according to the IRS. The accounting for taxes, interest, and penalties owing for the years in question is as follows:

1. For taxable year 1978, tax in the amount of $3,358.38, penalties in the amount of $1,071.61 and interest in the amount of $2,145.49, assessed on May 28, 1979.

2. For taxable year 1980, tax in the amount of $5,845.90, penalties in the amount of $1,145.06 and interest in the amount of $2,273.39, assessed on June 1, 1980.

3. For taxable year 1981, tax in the amount of $3,324.00, penalties in the amount of $534.94 and interest in the amount of $777.50, assessed on May 31, 1982.

4. For taxable year 1982, taxes in the amount of $4,941.00, penalties in the amount of $531.32 and interest in the amount of $77.31, assessed on May 16, 1983.

(all figures are current to date of the petition)

Tax liens were filed with the office of the Prothonotary, Dauphin County, Pennsylvania for taxable year 1978, on December 17, 1980, and January 20, 1982; for taxable year 1980, on January 20, 1982; and for taxable year 1981, on January 19, 1983.

Although the debtors have filed an amended plan, they have failed to provide for the 1978 income tax liabilities, maintaining that they need not provide for that year. They have also failed to provide for any penalties or postpetition interest and have objected to those portions of the IRS claim. The IRS has designated the questions presented in this case as follows: (1) Whether the 1978 income tax lien must be provided for in the repayment plan. (2) Whether the claims for penalties and postpetition interest on its tax claims should be allowed.

 The debtors argue first that their tax indebtedness for 1978 owed to the IRS is dischargeable under section 523(a)(1) because it falls outside the three year limitation of subsection 507(a)(7)(A)(i) of the Bankruptcy Code. The debtors argue that because the 1978 indebtedness would have been dischargeable in a liquidation case no payments are required for the 1978 indebtedness under section 1322(a)(2) of the Bankruptcy Code. This argument overlooks the fact that the IRS has filed perfected tax liens on all of the debts including the 1978 indebtedness. Section 507(a)(7) was designed for the priority treatment of *unsecured* tax liability. *See In re Crotty*, 11 B.R. 507, 509 (Bankr.N.D. Tex.1981). The Court in *Crotty* set forth the procedure for the treatment of tax claims in a Chapter 13 case as follows:

as the Government has filed its entire claim as secured, it is not entitled to treatment under Section 507 which

grants priority only to unsecured claims of governmental units.

. . . . .

Insofar as secured claims are dealt with in a plan, a condition to confirmation is that the value, as of the effective date of the plan, of property to be distributed under the plan on account of such secured claims is not less than the allowed amount of such claims, 11 U.S.C. § 1325(a)(5).

Section 506 of the Code sets forth the method for determining secured status. An allowed claim of a creditor secured by a lien on property in which the estate has an interest is a secured claim only to the extent of the value of such creditor's interest in the estate's interest in such property, and the balance of the claim if any is unsecured....

*Id.* at 509.

■ In a repayment plan, the approach is to pay the secured tax claim in full and then to provide for priority payments for the balance of the unsecured tax claims. In this case, the value of the collateral securing the tax liens is only approximately $4532.00. That amount is the value the debtors attributed to their property on Schedule B accompanying the petition. Although the IRS believes that the debtors have assets in the approximate amount of $7,000, its belief, raised only in its brief, is uncorroborated by any evidence on record. For the purposes of this analysis we accept the value of the assets to be $4532.00.

Since the lien on the 1978 indebtedness is first in time, it is first in right. *Jordon v. Hamlett,* 312 F.2d 121 (5th Cir.1963). The value of the collateral worth $4532.00 is therefore first applied against the 1978 tax lien which, including tax, interest and penalties, totals $6575. The lien is thus secured in the amount of $4,532.00 and unsecured is the amount of $2,043. The total unsecured tax claim is arrived at by adding the unsecured portion of the 1978 tax lien to the amount of the tax liens for 1980, 1981 and 1982. The total unsecured tax claim is thus $21,493.00. The treatment of that unsecured tax claim now requires an analysis under section 507 of the Bankruptcy Code.

■ The nexus between the provisions of Chapter 13 and section 507 with regard to priority treatment for tax indebtedness is found in section 1322. That section provides in part:

(a) the plan shall

. . . . .

(2) provide for the full payment, in deferred cash payments of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; ....

11 U.S.C. § 1322(a)(2). To the extent the unsecured tax claims of the IRS would fall under section 507(a) priority claims, the IRS would be entitled to full deferred payment over the course of the debtors' repayment plan. The issue before us is, thus, what portions of Claim No. 2 come within the ambit of section 507(a) of the Bankruptcy Code?

The first portion of unsecured Claim No. 2 to be reviewed is the portion pertaining to the delinquent 1978 taxes. Section 507(a)(7)(A) provides in part for the priority treatment of the following unsecured tax claims of governmental units:

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extension, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition;

. . . . .

Subparagraphs (i) and (ii) of 11 U.S.C. § 507(a)(7)(A).

■ Clearly the 1978 unsecured tax indebtedness falls within the exception to

the priority payment status: it was last due more than three years prior to the debtors' petition; and was assessed in 1979, well beyond 240 days of the petition. *See In re Coleman American Moving Services, Inc.,* 20 B.R. 267 (Bankr.D.Kan.1981). We conclude that no priority status exists for the debtors' 1978 tax indebtedness and hence no full deferred payments need to be made on the 1978 unsecured tax claim in the amount of $2,043. On the other hand, because the taxes due for the years 1980, 1981, and 1982 do not fall within the 507(a)(7)(A) exception to priority payment status they must be considered a priority claim.

■ The second portion of Claim No. 2, pertaining to the penalties due on the 1980, 1981 and 1982 taxes, fails to qualify for priority status. Section 507(a)(7)(G) provides the appropriate allowance only for "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss." 11 U.S.C. § 507(a)(7)(G). The plain meaning of the language of section 507(a)(7)(G) is that if a penalty is assessed as part of a claim, it receives no priority treatment unless assessed as a measure of the government's actual pecuniary loss. The penalty assessed by the IRS presents a situation analogous to one addressed by a Vermont Bankruptcy Court in the case of *In re New England Carpet Company,* 26 B.R. 934 (Bankr.D.Vt.1983). In *New England Carpet,* the City of Winooski had assessed interest and penalty charges in addition to the debtor's delinquent real estate taxes. The Vermont Court held that:

> it is questionable that a compensatory role should be assigned to these penalties in light of the fact that interest is additionally charged. The pecuniary loss to the City of Winooksi is the loss of the use of the tax money. This is precisely the kind of loss the interest is supposed to compensate. Therefore, without the submission of evidence by the City of Winooski to show that the penalties are

not punitive, the penalties are not entitled to priority.

*Id.* at 936–37.

■ Inasmuch as the IRS has assessed interest and penalties against the debtors in this case, we can only presume without evidence to the contrary that those penalties are intended to be punitive in nature. As such, no requirement for priority payment exists for these penalties. The IRS is entitled however, to priority payment of interest owed on the taxes as such interest is presumably in compensation for the loss of the use of the tax money to the date debtors filed their petition. *See In re Coleman American Companies, Inc.,* 26 B.R. 825 (Bankr.D.Kan.1983).

We therefore conclude that only the taxes and interest owing to the IRS for the years 1980, 1981, and 1982 are entitled to full deferred payments as a priority claim. We further conclude that the total allowed priority claim of the IRS, including interest and taxes for years 1980, 1981, and 1982 amounts to $17,239.

■ The remaining issue is whether the IRS is entitled to postpetition interest as part of the repayment plan. The IRS argues that it should receive post-petition interest on its entire claim. We find no authority to support an award of post petition interest with regard to the unsecured portion of the IRS claim. Postpetition interest is unenforceable as unmatured. *See* 11 U.S.C. § 502(b)(2); and *In re Christian,* 25 B.R. 438 (Bankr.D.N.M.1982).

The IRS is entitled however, to receive postpetition interest on the secured portion of its claim. It is well established that in order to provide a secured creditor with the value of his secured claim "as of the effective date of the plan," the debtor must pay interest on that claim. *See* 11 U.S.C. § 1325(a)(5)(B)(ii); *see generally, In re Einspahr,* 30 B.R. 356 (Bankr.E.D.Pa. 1983); *In re Rutherford,* 28 B.R. 899 (Bankr.N.D.Ill.1983); *In re Stafford,* 24 B.R. 840 (Bankr.D.Kan.1982).

The IRS has requested that the annually compounded rate of 11% be applied to its

claim pursuant to Sections 6621 and 6622 of the Internal Revenue Code. (26 U.S.C. §§ 6621 and 6622). The court concludes that in this case 11% compounded annually is the appropriate rate to be applied to the payments of the secured claim of the IRS. *See In re Crotty*, 11 B.R. 507 (Bankr.N.D. Tex.1981).

Because the debtors' repayment plan has failed to provide for appropriate payments of the secured portion of the IRS claim No. 2, the confirmed plan must be modified under Section 1329 of the Bankruptcy Code. Accordingly, an appropriate order consistent with this memorandum will be entered.