**In re Michael R. EVANS, Debtor.**

**Bankruptcy No. 85–02638K.**

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 28, 1986.

Arthur P. Liebersohn, Philadelphia, Pa., for debtors.

Frederic J. Baker, Washington, D.C., Virginia Powel, Asst. U.S. Atty., Philadelphia, Pa., for I.R.S.

James J. O'Connell, Philadelphia, Pa., trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The principal issue presented by this case at this juncture—whether a Chapter 13 debtor can present a plan consistent with the Bankruptcy Code when he chooses to attempt to "provide" for claims of the Internal Revenue Service ("IRS") by not dealing with these claims at all under the terms of his Plan, i.e., dealing with them "outside" of his Plan—is presented to us by the Debtor in an almost bizarre procedural posture. We conclude that, except for that portion of the IRS claim which is accorded priority status pursuant to 11 U.S.C.

§ 507(a)(7)(A), the Debtor does, as he contends, have the option to deal with the secured portion of the IRS debt "outside" of his Plan. We will therefore grant to the Debtor the relief of determining that only the position of the IRS claim which must be accorded priority status must be paid in his Plan, and hence for which a Proof of Claim must be honored, and further allow him to modify his Plan in a manner consistent with the Conclusions set forth in this Opinion. We also shall deny a subsequent Motion of the IRS to dismiss the case or require its conversion to Chapter 7 of Title 11, U.S.Code.

The Debtor filed this case under Chapter 13 of Title 11 on June 28, 1985. At the time of filing his Petition, he also filed a Statement listing a debt to the IRS, in no specified amount and designated only "TO BE PAID OUTSIDE PLAN." Also filed was a form Plan, contemplating payments of $360.00 monthly for thirty-six (36) months, and not designating any specific disposition of any claims. It did state that "[a]ll claims entitled to priority under 11 U.S.C. § 507 shall be paid in full in deferred cash payments as required by 11 U.S.C. 1322(a)(2)...."

On September 10, 1985, the IRS filed a Proof of Claim setting forth the following amounts due on alleged federal income tax liabilities of the Debtor from 1978 through 1984, totalling $124,413.47:

| Tax Year | Tax Due | Penalty to Petition Date | Interest to Petition Date |
|---|---|---|---|
| 1978 | $ 4,647.29 | $3,762.86 | $9,056.76 |
| 1979 | 8,080.42 | 3,814.45 | 8,591.38 |
| 1980 | 10,035.03 | 4,766.64 | 8,843.21 |
| 1981 | 10,035.03 | — | 5,572.67 |
| 1982 | 10,035.03 | — | 3,011.98 |
| 1983 | 10,035.03 | — | 1,529.63 |
| 1984 | 10,035.03 | — | 267.95 |

Also, $12,343.08 was added for "penalty to date of petition" on the unsecured (1981 to 1984) claims.

Tax liens for the years 1978, 1979 and 1980 were reported to have been filed against the Debtor, who owns residential real estate, on September 7, 1983.

On February 12, 1986, the Debtor filed a "Motion of Debtor in Objection to Allowance of Claim" of the IRS. The only Objection recited was that "[t]here exists no feasible method for paying the claim of creditor except outside the Chapter 13 plan." Gratuitously, the Debtor indicated, in his Objection, a willingness to stipulate that the IRS could have relief from the automatic stay, presumably to enforce its tax liens against his realty. Shortly thereafter, on February 25, 1986, the Debtor filed a "First Modified Plan," reducing payments to $290.00 monthly and extending the payment period to sixty (60) months.

Before any disposition took place on the Debtor's so-called Objection to the IRS Proof of Claim, this case took a course which this Court can only hope is atypical. On April 21, 1986, the Debtor filed a Second Modified Plan, increasing his monthly payments to *$2,600.00* monthly for sixty (60) months. On May 7, 1986, this Court approved a Report of Chapter 13 Standing Trustee recommending confirmation and an Order confirming the Second Modified Plan.[1]

On June 6, 1986, the IRS filed an Amended Proof of Claim, setting forth the same figures relative to the tax liabilities between 1978 and 1980, but substituting the following figures for later tax years, which resulted in reducing the Debtor's total alleged tax liability to $64,359.21:[2]

| Tax Year | Tax Due | Interest to Petition Date |
|---|---|---|
| 1981 | $830.00 | $460.92 |
| 1982 | 343.00 | 102.16 |
| 1983 | 21.00 | 3.20 |
| 1984 | 514.00 | 13.72 |

(Penalty on unsecured claims reduced to $532.37).

On August 4, 1986, the Debtor then filed an Objection to the new IRS claim, identical in substance to that filed on February 12,

---

**1.** There is no indication that the Debtor made any effort to comply with Bankruptcy Rule 3019, or Local Rule 3019.1, in either instance where he modified his Plan. It also appears that the Trustee perfunctorily filed his Report without consideration of the Debtor's compliance with these Rules, or any consideration as to whether the Plan was practical, given the Debtor's means. *See* page 508 *infra*. We *hope* that this is atypical.

**2.** *But see* page 510, note 6 *infra,* which indicates that the sum of the figures on the Proof of Claim is actually $64,358.41

1986, described *supra.* On September 11, 1986, with the case in this posture, the Objection of the Debtor came before the Court, and the IRS appeared to oppose it. Apparently oblivious to 11 U.S.C. § 1325(a)(6), the Debtor's Counsel contended that he had known that his client could not pay the $2,600.00 monthly required under the Second Modified Plan, but had proposed a Plan providing for such payments in order that he could get a Plan confirmed and to begin the flow of payments to other creditors.[3] Admitting that the payments under the Second Modified Plan of $31,-200.00 annually were totally beyond his client's financial capability, hardly a surprising assertion in light of the allegation, in the Chapter 13 Statement, that the Debtor's take-home pay was only $142.00 weekly, or $7,384.00 annually, the Debtor's Counsel expressed an intention to not deal with the IRS at all in his Chapter 13 case and take his chances on the well-known munificence of that agency by attempting to make payments or arrangements to pay it "outside" of the Plan.

Counsel for the IRS, not surprisingly, contested the propriety of these procedural maneuvers on behalf of the Debtor. In addition, Counsel for the IRS, apparently refusing the Debtor's offer to provide it relief from the stay and foreclose on its tax lien, made the somewhat surprising determination that the Government's interest could best be served by rejecting the Debtor's offer and opposing any concept that any of the obligation to the IRS could be dealt with "outside" the Plan. It is difficult to explain this position of the IRS except as perhaps a matter of principle, as the best that it could seem to hope for, given the Debtor's low income, was a foreclosure upon his residential real estate by enforcement of its tax liens.

The Court, given this rather confusing display of advocacy on behalf of both parties, advised both Counsel that it would appreciate briefs on the issue of whether 11 U.S.C. § 1325(a)(5) or any other Code provision permitted payments on secured or priority claims to be made "outside" the Plan, and on any other issues which the parties deemed relevant, to be filed simultaneously on or before October 3, 1986, with each party being permitted to file a Reply Brief on or before October 15, 1986. The Trustee or any interested party, particularly opposing counsel in *In re Valerie Freeman,* Bankruptcy No. 86–00941K (E.D.Pa.), a case which raised the issue of whether a Government-held mortgage could be dealt with "outside" of a Chapter 13 Plan, were invited to file Briefs as well if they wished to do so.[4]

On September 22, 1986, while this matter was pending before this Court, the IRS filed a Motion to Dismiss Debtor from Chapter 13 or in the Alternative to Convert to Chapter 7, which was answered by the Debtor, and was listed before this Court

---

**3.** We do not accept this explanation as justification for the course of action chosen by the Debtor's Counsel in this case. The Trustee is generally extremely cooperative in permitting pre-confirmation payments to creditors designated by the debtor, and this would have accomplished the purpose recited by Counsel as his justification. Rather, it appears that the motivating factor was the desire of the Debtor's Counsel to put the case in a posture to submit a fee petition, which he did and which was approved by Order of this Court in the amount of $900.00 on June 2, 1986. It is almost needless to comment that such a motivation did not justify the steps taken here, and notice is given that, in the future, fee orders will be revoked if similar conduct comes to light.

**4.** Only Counsel for HUD in the *Freeman* matter accepted this invitation. The IRS, in the only Reply Brief filed, argued that the Debtor could not properly challenge the status of its claims through the medium of the Objection before the Court. This argument of the IRS has some merit insofar as the determination of the secured status of that portion of the IRS claim which is arguably secured is concerned. See page 510 infra. However, we believe that an Objection to a Proof of Claim is an appropriate device to determine what sums must be paid to a certain creditor in a Plan. Since the Debtor did, at least in his Brief, fully explain his factual and legal position and the IRS had ample opportunity to respond on the merits, and did so, we believe that refusal to decide the merits of the issue of what is required to be paid to IRS within the Debtor's Plan would be inappropriate.

for a hearing on October 30, 1986. This Opinion and accompanying Order dispose of this Motion as well, and therefore this hearing is cancelled.

After considerable research, mostly from authorities not cited in any of the Briefs submitted, the Court has no hesitancy in holding, with the great weight of authority, that 11 U.S.C. § 1325(a)(5) *does* allow a debtor to choose whether to deal with a secured claim in his Plan at all, i.e., whether to provide for or pay a secured claim "inside" the Plan or "outside" the Plan. *See Matter of Bradley,* 705 F.2d 1409, 1411 (5th Cir.1983); *In re Foster,* 670 F.2d 478, 488–90 (5th Cir.1982); *In re Glasper,* 28 B.R. 6, 8, 9 (9th Cir.Bankr.App.1983); *In re Case,* 11 B.R. 843, 847 (Bankr.D.Utah 1981) (per MABEY, B.J.); and *In re Wittenmeier,* 4 B.R. 86, 88 (Bankr.M.D.Tenn.1980). The only contrary decisions appear to be two early cases decided by the same bankruptcy judge. *In re Tatum,* 1 B.R. 445, 446 (S.D.Ohio 1979); and *In re Blevins,* 1 B.R. 442, 443–44 (S.D.Ohio 1979).

The *Foster* decision, which the Government's Counsel may be surprised to learn represented a reversal of the principal contrary authority cited by it for the contrary position in its Brief, *In re Foster,* 9 B.R. 482 (Bankr.S.D.Tex.1981), provides the most complete analysis of this issue. The Court, in its Opinion, clarifies the ambiguity of the use of the term "outside" of the Plan, which is helpful to note at the outset of the legal discussion here. Some courts have used the term to refer to any situation where the Debtor makes direct disbursement of payments to a creditor, rather than through the medium of the Trustee. *See* 670 F.2d at 486–88. An example of this usage of the term "outside" the Plan appears in *In re Hines,* 7 B.R. 415, 420 (Bankr.D.S.D.1980). While the direct disbursement situation raises an interesting issue as to whether the Trustee should receive his statutory fee, per 11 U.S.C. § 1302(e), as to the payments disbursed directly to the creditor by the debtor, it is not a reference to the means of disbursement which is referred to by the use of the term "outside" the Plan here.

Rather, in issue here is a situation, unlike that in *Foster,* where the Debtor proposes not to pay arrearages or any portion of sums due to a secured creditor in his Plan, i.e., where he opts not to deal with a secured creditor at all by the terms of his Plan. *See id.* at 485–86. It is in this context that the term "outside" the Plan is used here.

Particularly relevant here is the *Foster* court's conclusion that the use of the phrase "provided for by the plan" in 11 U.S.C. § 1325(a)(5), by implication approves the concept that the obligation to a secured creditor can be accomplished "outside" of the Plan, i.e., not dealt with by the terms of the Plan at all. The *Foster* Court does, however, hold that "a plan may not provide for the making of current payments on a mortgage claim outside the plan while curing the arrearage on that claim under the plan pursuant to § 1322(b)(5)." 670 F.2d at 489. However, the clear implication is that when a debtor, like the Debtor here, does *not* attempt to cure payments arrearages on a secured debt, per § 1322(b)(5), the plan may "provide" that the secured creditor may be dealt with "outside" of the Plan.

The *Wittenmeier* court refers to another Code section in support of the same conclusion. It cites to 11 U.S.C. § 1326(b), which the court states that, by requiring payments "[e]xcept as otherwise provided in the plan" to be paid through the Trustee, impliedly sanctions the conclusion that payments may be made outside the plan.

Moreover, Collier concurs with the conclusion reached by the above cases in the following passage:

> A chapter 13 plan may, but need not, modify the rights of most holders of secured claims. Since a plan need not modify allowed secured claims, it is discretionary with the debtor whether to make provision in the chapter 13 plan for allowed secured claims. 5 COLLIER ON BANKRUPTCY, ¶ 1325.06, at 1325–31 (15th ed. 1986) (footnotes omitted).

Therefore, as long as a debtor does not attempt to modify the rights of secured

parties per 11 U.S.C. § 1322(b)(2) in his plan, by curing arrearages therein or in any other respect, he clearly has the option of not dealing with the secured claim at all in his plan.

There is practical justification for this result. Exercising the option to treat a secured claim "outside" the Plan will not prejudice the secured creditor, who will retain his security and his unmodified claim despite the bankruptcy filing, or exactly as if there had been no filing. Being dealt with "outside" the Plan may make it quite easy for the secured claimant to obtain relief from the automatic stay, and hence proceed exactly as if there had been no filing.

In the instant case, the Debtor made no effort to modify the rights of the IRS per 11 U.S.C. § 1322(b)(2) in his Plan. He also indicated that he was quite willing to eschew the protections of the automatic stay, although a disposition of this issue would require a separate Motion by the IRS. We believe that the Debtor properly exercised a right to make the choice not to deal with the secured claims of the IRS in his Plan and we therefore must reject the Government's contentions to the contrary.[5]

This determination, while resolving an important and pervasive issue, does not totally resolve the disputes of the parties before us in this case. However, the analysis presented by Judge Woodside in *In re Healis*, 49 B.R. 939 (Bankr.M.D.Pa.1985), an authority cited with approval in the Briefs of both parties and one with which we concur, does resolve the remaining issues. *Accord: In re Crotty*, 11 B.R. 507 (Bankr.N.D.Tex.1981).

In *Healis*, Judge Woodside divides claims of the IRS similar to those in issue here into three (3) categories:

1.  Secured claims, i.e., those pursuant to which the IRS has filed a tax lien or liens.
2.  Priority claims, i.e., those which come within the scope of 11 U.S.C. § 507(a)(7)(A).
3.  Unsecured claims, i.e., those which do not fall within either of the foregoing categories.

In the instant factual matrix, tax claims for the years 1978, 1979, and 1980, which total all but $2,820.37 of the Debtor's tax liability, are secured. The Debtor argues that his equity in his realty, which secures the $61,548.04 remaining secured portion of the IRS claim,[6] is far less than $61,548.04, and hence that a much smaller amount of the IRS case is actually secured. Such an analysis is performed by the *Healis* court, 49 B.R. at 341. However, we are unwilling to accept the value of the Debtor's equity as declared on his Schedules at this juncture, without providing the IRS an opportunity to contest same, now that it is aware that the valuation of this realty could be relevant to the determination of the status of at least part of its claim. Furthermore, as to this portion of his contentions, we believe that the Debtor, if he wishes to raise this issue, must proceed to do so in a separate adversarial complaint, per 11 U.S.C. §§ 502, 506, and Bankruptcy Rule 3007.

We also disagree with the Debtor's contention that his tax liabilities for the years 1982, 1983, and 1984 can be dealt with "outside" the Plan. These claims, totalling $997.08, are, as the Debtor concedes, priority claims within the scope of 11 U.S.C. § 507(a)(7)(A). These liabilities are *not* secured by any tax liens. They are, therefore, unsecured priority claims, con-

---

5. This result also disposes of the contrary position of HUD in its Brief and in the disposition of *In re Valerie Freeman, supra*. We can conceive of no reason why, under the circumstances in this case and in *Freeman*, we should accept the Government's argument that the Debtor's respective Plans do not meet the criteria of such cases as *In re Estus*, 695 F.2d 311, 317 (8th Cir.1983), for determining whether the Debtor's

Plans were proposed "in good faith," per 11 U.S.C. § 1325(a)(3).

6. Like the Debtor, by our addition, the sum of the IRS claims is $64,368.41, not $64,369.21 as is alleged by the IRS on its Amended Proof of Claim. We are unable to explain this $.80 discrepancy and therefore assume that the total figure is erroneous.

cerning which 11 U.S.C. § 1322(a)(2) mandates that "[t]he plan shall— ... provide for the full payment," unless the IRS, as seems unlikely here, should agree to a different treatment. *See Healis, id.* Therefore, the Debtor cannot pay *this* sum "outside" of the Plan, and must either provide for the payment of this sum, or suffer possible revocation of his confirmation and dismissal of his case.[7]

■ We agree with the Debtor that the residuum of his tax liability, i.e., the sums owing for tax year 1981, and the penalty on unsecured claims, in the amount of $1,823.29, which are neither secured nor enjoy a priority status per 11 U.S.C. § 507(a)(7)(A), constitute merely an unsecured claim. As to the unsecured portion of its claim, the IRS is accorded only the same status as other unsecured claimants.

The muddled procedural posture of this case makes the framing of an Order consistent with the aforesaid Opinion somewhat problematical. We are tempted, as the IRS suggests, to deny the Debtor's Objection to the claim because, as the IRS points out, the Debtor does not dispute the amounts or characterizations of the various claims of IRS for any of the tax years in issue, but only the legal consequences of same.

Hence, we believe that the Debtor can properly challenge certain aspects of the status of the IRS' claim, i.e., the issue here of whether disbursement on certain claims should be made by the Trustee because they are "outside" the Plan, by means of an Objection to its claim. The Debtor's brief, to which the IRS had an opportunity to fully respond, certainly makes his position clear.

Finally, we also suspect that the Debtor may once again wish to modify his Plan, to comport with 11 U.S.C. § 1325(a)(6), as well as the conclusions reached in this Opinion. He may also wish to reopen the issue of how much of the IRS claim is actually secured by an adversarial complaint direct-

ed to this issue. We do not agree with the statements of the IRS, in its Brief, that the Debtor must establish that there has been a "meaningful change in his financial position," or any other "cause," to modify his Plan, per 11 U.S.C. § 1329(a). Rather, we believe that leave to modify "shall be freely given when justice so requires," as is the case when an amendment to pleadings is sought, see Federal Rule of Civil Procedure 15(a), as a modification of a plan is effectively an amendment of pleadings. In contrast to the situation addressed in *In re Beasley*, 34 B.R. 51 (Bankr.S.D.N.Y.1983), cited by the IRS in opposition to allowing the Debtor to make any modification, we do not believe that modifications to the Debtor's Plan, made in full compliance with the pertinent rules and consistent with this Opinion, would violate any provision of 11 U.S.C. § 1325(a).

Our result herein also causes us to deny the Motion to Dismiss or convert this case filed by the IRS during the briefing and decision-making process in this matter. Contrary to the assertion of IRS in its Memorandum explaining this Motion, it is not necessary for the Debtor to pay the entire IRS claim and continue to pay $2,600.00 monthly to present a feasible plan.

## ORDER

AND NOW, this 28th day of October, 1986, in conformity with the foregoing Opinion, it is hereby ORDERED AND DECREED as follows:

1. The Debtor's objection to the Proof of Claim of the Internal Revenue Service (IRS) is SUSTAINED in part, and only the portion of that claim which is accorded priority status, i.e., $997.08, shall be required to be paid under the Debtor's Plan, and must be disbursed to the IRS by the Trustee.

2. The Debtor may modify his Second Modified Plan within twenty (20) days of

---

7. In fact, as per the language quoted on page 507 of this Opinion, which also appears at paragraph (b) of the Debtor's Second Modified Chap-

ter 13 Plan, the Debtor indicates that he *does* intend to pay such amounts in this Plan.

**512**

this Order, comporting strictly with Bankruptcy Rule 3019 and Local Bankruptcy Rule 3019.1, and may classify this Claim consistently with the conclusions set forth in the foregoing Opinion in so doing.

3. The IRS' Motion to Dismiss Debtor from Chapter 13 or in the Alternative to Convert to Chapter 7 is DENIED.