**In re Hannah WALDMAN a/k/a Hanna Roth a/k/a Hanna Roth Waldman, Debtor.**

**Bankruptcy No. 85–05280S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 24, 1987.

Arthur B. Liebersohn, Philadelphia, Pa., for debtor.

Gary W. Calvin, Philadelphia, Pa., for claimant/Rhoda Gershman.

Edward Sparkman, Philadelphia, Pa., Trustee.

### OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

A. INTRODUCTION, PROCEDURAL HISTORY, AND A CONFESSION OF PAST ERROR.

On August 5, 1987, we filed a Memorandum Opinion, now reported at 75 B.R. 1005

(Bankr.E.D.Pa.1987), in this Chapter 13 bankruptcy case, filed by the Debtor on December 5, 1985. There, we sustained the Debtor's Objection to an allegedly secured Proof of claim in the amount of $49,259.50 filed by one RHODA GERSHMAN (hereinafter referred to as "Gershman") on the ground that, per the Debtor's First Modified Chapter 13 Plan, dated February 23, 1987, the Debtor had properly opted to deal with Gershman's claims outside of her Plan. *See also In re Evans*, 66 B.R. 506 (Bankr.E.D.Pa.1986), *aff'd*, 77 B.R. 457 (E.D.Pa. 1987). However, in so ruling, we conditioned our result "on the Debtor's refraining from modifying the rights of Gershman under 11 U.S.C. §§ 502, 506, or § 522(f)(1)." 75 B.R. at 1008.

On August 21, 1987, the Debtor filed a Motion for Reconsideration of our Order, contending, *inter alia*, that our statement that "when a debtor opts to deal with a creditor 'outside the Plan' and, thus, as if the bankruptcy never existed as to that creditor, the debtor must forebear use of the Code to effect the right of the secured creditor in any other way," *id.*, swept too broadly. In fact, as the Debtor pointed out, such reasoning was inconsistent with several statements which we made in *Evans*, wherein we approved the efforts of the Debtor there to utilize 11 U.S.C. §§ 502, 506 to determine the value of the secured claim of the Internal Revenue Service (hereinafter referred to as "IRS") filed in that case, even though we allowed the Debtor to deal with the IRS' claim "outside the Plan." *See* 66 B.R. at 510.

In an Order of October 15, 1987, we denied the Debtor's Motion for Reconsideration as untimely served. *See In re Campfire Shop, Inc.*, 71 B.R. 521, 523–24 (Bankr. E.D.Pa.1987). Nevertheless, we note that we did err in the breadth of our statement in the prior decision, holding that no modification of a claim dealt with outside of a plan could ever take place. Certainly, as we held in *Evans*, an attempt by a debtor to cure arrears, per 11 U.S.C. § 1322(b)(2), cannot be effected with respect to a claim dealt with "outside the Plan." 66 B.R. at 509–10. However, other Code provisions,

at least in certain circumstances, should be available to debtors who choose to deal with claims "outside the Plan." Our ruling of October 15, 1987, however, renders it unnecessary to consider whether use of 11 U.S.C. §§ 502, 506 or 522(f)(1) would have been permissible as to Gershman's claim here. For this ruling set off a new round of proceedings which we herein shall hopefully finally put to rest.

On August 19, 1987, prompted by our previous Opinion, 75 B.R. at 1007, Gershman filed the first of the Motions before us at this time, seeking relief from the automatic stay to resume her pursuit of the Debtor in state court.

However, in our Order of October 15, 1987, we also allowed the Debtor to amend her Plan once again to embrace Gershman, and to file any motions or substantive objections to Gershman's claim on or before October 30, 1987, followed by a hearing on any filings made pursuant to these Orders and Gershman's motion for relief from the stay on a "must-be-tried" basis on December 1, 1987.

On October 30, 1987, the Debtor proceeded to file a Second Modified Chapter 13 Plan contemplating treatment therein of Gershman's claim; a Motion to avoid her judicial lien pursuant to 11 U.S.C. § 522(f)(1); and an Objection to her Proof of Claim. The combined hearing on all of the outstanding matters before us in this case was indeed heard on December 1, 1987. At its conclusion, we directed counsel to simultaneously file Briefs on or before December 18, 1987, recognizing that we should resolve these matters before the Debtor's long-delayed confirmation hearing, rescheduled on January 20, 1988, *see* 75 B.R. at 1008, was to take place.

In our Order of December 2, 1987, restating the aforementioned briefing schedule, we suggested that the parties give particular attention to our recent Opinions in *In re Lewis*, 80 B.R. 39 (Bankr.E.D.Pa.1987), in which we considered the relative burdens of proof in deciding Objections to Proofs of Claim; and *In re Chandler*, 77 B.R. 513

(Bankr.E.D.Pa.1987), where we discussed several issues pertinent to resolution of § 522(f)(1) motions. Although the divergence in the testimony of the protagonists herein, and a necessity to make a value judgment regarding the Debtor's residential realty, prompt us to present the within Opinion in the form of Findings of Fact and Conclusions of Law, the latter of which contain whatever discussion of the legal issues involved is necessary, we find that, despite the invitation of counsel that we explore a veritable myriad of other issues, *Lewis* and *Chandler, supra,* alone leads us to the results reached.

### B. *FINDINGS OF FACT*

1. The Debtor is the widow of Paul Waldman, with whom she maintained a jewelry store at 1422 Walnut Street, Philadelphia, Pennsylvania, for over twenty years.

2. In 1955, the Debtor, either independently or with her husband, purchased her present residential real estate, situate at 1916 Evarts Street, Philadelphia, Pennsylvania 19152 (hereinafter referred to as "the Premises").

3. On February 10, 1977, after the death of her husband unquestionably rendered her the sole owner of the Premises, the Debtor transferred the premises to her son, Steven Waldman (hereinafter referred to as "Steven"), in order that Steven could use the Premises as collateral for loans to purchase inventory to maintain a jewelry business of his own at the same location as had his parents.

4. Steven proceeded to make such loans, borrowing $30,000.00 from Bell Savings Association (hereinafter referred to as "Bell") on April 11, 1977, and $6,664.44 from American Pacific Investment Corporation (hereinafter referred to as "American Pacific") on May 7, 1977, and giving mortgages on the Premises in both transactions.

5. On March 8, 1983, Steven was killed, and his widow transferred the Premises back to the Debtor on August 22, 1983, subject to the mortgages.

6. On February 10, 1977, Gershman loaned $6,300.00 to the Debtor and Steven, evidenced by a note containing a confession of judgment clause of same date.

7. The Debtor and Gershman gave conflicting testimony as to whether this loan was ever paid off. We credit the testimony of Gershman that a balance remained unpaid on the obligation as of November 18, 1977, when a confessed judgment was entered against the Debtor and Steven in connection therewith in the Philadelphia County Court of Common Pleas (hereinafter referred to as "Phila.C.P."), November Term, 1977, No. 2369, and we determine that the balance due at the time was $3,425.55, the amount recited in this action, plus interest of $235.53, or $3,661.08.

8. On July 28 and/or 29, 1977, Gershman, the Debtor, and Steven entered into a Consignment Agreement, later memorialized by a redrafted Consignment Agreement Separate Judgment Notes of August 29, 1977, signed by the Debtor and Steven. All of the August documents contained confession of judgment clauses. Pursuant to the terms of the Consignment Agreement, Gershman remitted checks from certain of her personal accounts directly to Carver W. Reed & Co. in the amount of $18,000.00 on behalf of the Debtor in order that jewelry which the Debtor has pawned could be recovered and sold in her store. Pursuant to the terms of the August 29, 1977, Consignment Agreement, the Debtor and Steven were obliged to pay $630.00 for six months, or $3,780.00, to Gershman for her share of the profits in the sale of the jewelry, and the Debtor and Steven were to account to Gershman for the jewelry and repay her the $18,000.00 as they sold the various items of consigned jewelry. The terms varied slightly from the July 28, 1977, transaction, in which the Debtor and Steven executed a note in the amount of $3,666.66 in addition to the promising to pay back the $18,000.00.

9. We credit the testimony of Gershman that the Consignment Agreements accurately portray the transaction. We discred-

it the testimony of the Debtor that the $18,000.00 was advanced to her and her son by Gershman as an unsecured loan.

10. The Debtor, per her admission and for no justifiable reason, sold the jewelry after making only a very few repayments to Gershman. Since Gershman, in suits in Phila.C.P., July Term, 1978, Nos. 4835 and 4836, claimed that the principal balance due at that time was $21,150.00, we find that the Debtor or Steven made payments to Gershman between August, 1977, and July, 1978, which left a $21,150.00 balance due.

11. Gershman filed at least five lawsuits [1] against the Debtor and/or Steven in Phila.C.P. arising out of the February, 1977, and July, 1977, transaction which can be summarized as follows:

| TERM & NO. | BASIS OF SUIT | DATE AND TYPE OF JUDGMENT | AMOUNT OF JUDGMENT | STATUS |
|---|---|---|---|---|
| Sept., 1977, No. 1552 | Consignment Agreement of 8/29/77 | 9/15/77 – Confessed | $25,074 – 21,780 + 3,267 Attorney's fees | Opened 7/18/78 |
| Nov., 1977, No. 2369 | Note of 2/10/77 | 11/18/77 – Confessed | $4,575.12 – with added Interest and Attorney's fees | Opened 12/6/78 |
| Jan., 1978, No. 1968 | Note of 7/28/77 for $3,666.66 | 2/21/86 – Assumpsit | $5,425.68 vs. Debtor as Administrator of Estate of Steven only | Remaining of record |
| July, 1978, No. 4835 | Apparently Judgment Note of 8/29/77 signed by Steven for $21,780 | 7/28/78 – Confessed vs. Steven only | $24,222.50 – $21,250 + $3,172.50 Attorney's fees | Opened 5/27/80 |
| July, 1978, No. 4836 | Judgment Note of 8/29/77 signed by the Debtor for $21,780 | 7/28/78 – Confessed vs. Debtor only | $24,222.50 – $21,150 + $3,172.50 Attorney's fees | Opened 5/27/80 |

12. The Debtor and Michael Delaney, a duly-qualified realty appraiser, provided testimony regarding the condition and value of the Debtor's premises. Both agreed that the premises was neglected and in "poor to fair" condition. Mr. Delaney specifically cited to the following deficiencies in the Premises: a dysfunctional bath, severe roof leaks, foundation settlement, presence of exposed wires, and damaged floors and interior doors.

13. The Debtor, without any particular basis therefor, contended that the Premises was only worth $30,000.00 at present.

14. Mr. Delaney contended that the present fair market value of the Premises was $55,000.00, deriving same from his contention that comparable homes in good condition in the same neighborhood were selling at $75,000.00 to $80,000.00, and that $20,000.00 would be needed to put the Premises into good condition.

15. However, at the time of the Debtor's bankruptcy filing on December 5, 1985, Mr. Delaney estimated that homes presently selling at $75,000.00 to $80,000.00 were selling "in the high $50,000's."

---

1. There is mention, in the Debtor's Motion and proposed Order attached to its Motion to avoid the Debtor's liens, of another judgment in the Phila.C.P. at November Term, 1981, No. 1665. We have no information about this action in the record.

16. Interpolating the $20,000.00 repairs needed to the Premises in light of the "high $50,000's" value of a comparable home in good condition at that time, we conclude that the value of the Premises, as of December 5, 1985, was $39,000.00.

17. The principal balance of the Debtor's first mortgage to Bell, as of September, 1987, was $31,321.26. Since the Debtor indicated that $10,000.00 was paid to Bell by the Pennsylvania Housing Finance Agency (hereinafter referred to as "PHFA") pursuant to a Homeowners' Emergency Mortgage Assistance Act loan [2] in the past year prior to the computation of this balance,[3] the balance owed to Bell, at the time of the Debtor's bankruptcy filing, must have been at least $32,000.00.

18. The Debtor also testified that the balance of the loan secured by the second mortgage in favor of American Pacific was approximately $11,000.00 as of the date of her bankruptcy filing.

19. Although Victoria Rosin was called as a witness by Gershman to rebut the Debtor's testimony that payments had not been made on the American Pacific obligation by stating that she had carried payments to this party on the Debtor's behalf, we credit the Debtor's rebuttal testimony that, while Ms. Rosin had handled some payments on an earlier loan to American Pacific which had been paid off, the subsequent loan, secured by the second mortgage, remained delinquent.

20. Gershman established, to our satisfaction, that an unpaid balance of $3,661.08 existed on the February 10, 1977, note as of November 18, 1977. Allowing interest at six (6%) percent from November 18, 1977, to December 5, 1985 (96.5 months × .05 monthly interest × $3,661.08) yields an additional $1,766.47,[4] or a total allowable claim of $5,427.55 on this obligation.

21. Gershman also established, to our satisfaction, that $21,150.00 of the entire obligation of July–August, 1977, was unpaid as of July 28, 1978. Allowing interest at six (6%) percent from July 28, 1978, to December 5, 1985 (88.25 months × .05 monthly interest × $21,150), yields an additional $9,332.44,[4] or a total allowable claim of $30,482.44 on this obligation.

22. The sum of the total allowable claim on both of the obligations is $35,909.99.

## C. *CONCLUSIONS OF LAW*

1. Gershman has met her burden of proving that her total allowable claim against the Debtor is $35,909.99.

In *Lewis, supra,* we established that, when both parties appear and present evidence at a hearing to consider an objection to a proof of claim, we "should render our decision exactly as we would do if we were hearing any sort of adversary proceeding or contested matter, with the claimant in the same position as the party plaintiff or movant." 80 B.R. at 41.

There is no real question that Gershman has a legitimate claim in some amount against the Debtor. The Debtor conceded her obligation in the July–August, 1977, transaction, in approximately the amount which we hold is due. We find Gershman the more credible party in resolving the issue of whether any sum is due as a result of the February, 1977, transaction.

The only response of the Debtor, in her Brief, is not that Gershman has at any time slept on her rights, thus undermining the credibility of their validity, but that she has been too vigorous in maintaining several actions simultaneously against the Debtor to assert her rights when one or two at most would have sufficed. We agree that

---

**2.** The loan program referenced here is described in more detail in our Opinion in *In re Watts,* 76 B.R. 390, 392–94 (Bankr.E.D.Pa.1987).

**3.** The Debtor attached to her Brief a Note of November 25, 1986, between PHFA and herself in the amount of $15,684.40, which indicates that the $10,000.00 figure, which is all that we can consider because it is all that is in the record, was probably too conservative.

**4.** We believe that the six (6%) percent figure is payable, even if the judgments are all invalid, as pre-judgment interest. *See, e.g., Benefit Trust Life Insurance Co. v. Union National Bank,* 776 F.2d 1174, 1178–79 (3d Cir.1985); *In re Lessig Construction, Inc.,* 67 B.R. 436, 444–45 (Bankr.E.D.Pa.1986); and RESTATEMENT (SECOND) OF CONTRACTS, § 354(1) (1981).

Gershman has displayed perhaps excessive vigor in pursuing these claims. However, after perceiving the Debtor's rather disturbing slipperiness in evading her responsibilities under the Consignment Agreements, we can scarcely fault Gershman for concluding that extraordinary vigor was necessary to attempt to collect the sums due to her. Of course, even such vigor has proved unavailing.

As we perceive it, the real issue is not whether Gershman has a legitimate claim for some amount, as she clearly does, but what the amount of the indisputably valid claim is. As we recently stated in *In re Windsor Communications Group, Inc., Windsor Communications Group, Inv. v. Metropolitan Consolidated Industries, Inc.*, 80 B.R. 712, 727 (Bankr.E.D.Pa., 1987):

> the plaintiff's burden is merely to prove damages with "reasonable certainty," *see In re Chapman*, 77 B.R. 1, 6 (Bankr.E.D. Pa.1987), [and] it is essential that the plaintiff establish the fact of damages, as opposed to the precise amount of damages, the computation of which does allow a court some discretion in favor of the plaintiff. *See Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931). *See also Keystone Floor Products Co. v. Beattie Mfg. Co.*, 432 F.Supp. 869, 880–82 (E.D.Pa.1977); and *Taylor v. Kaufhold*, 368 Pa. 538, 546, 84 A.2d 347, 351 (1951).

We believe that the issue of computation of damages here can be likened to that in *Chapman, supra*. There, the ingenuity of counsel for an indigent Debtor seeking damages for a breach of contract, wherein counsel interpolated figures from the Debtor's raw records, allowed us to reasonably measure the Debtor's damages and enter an award of a sum certain in his favor. Here, counsel for Gershman is similarly ingenious in calculating Gershman's legitimate claims from a welter of documents, pleadings, and not necessarily helpful ramblings from his client. Ultimately, we do not accept entirely any of his figures, but the figures presented by him provided us with a legitimate starting point for computing Gershman's claim.

With respect to the February, 1977, obligation, we decline the invitation of the Debtor's counsel to utilize the $4,575.12 figure in the November, 1977, judgment, which has been garnished with an attorney's collection fee, and we utilized, as a starting point, the figure equal to the imposed balance plus interest, i.e., $3,661.08. Since the judgment has been opened, we clearly are not in any way bound by it. We are, however, somewhat perplexed as to why, in the calculation of the amount due by Gershman's counsel, the amount of the note less the amount paid yields a figure $500.00 less than the actual difference. Obviously, one of the figures is wrong, and we allow Gershman only the lowest possible correct figure, in recognition that she bears the burden of proof.

Similarly, we utilize the figure in the August 29, 1977, Consignment Agreement which we ascertained constituted the balance due as of the July, 1978, judgment as our starting point for calculations of the amount due in the latter transaction, not, as Gershman suggests, the judgment figures garnished with attorney's fees. We acknowledge a slight discrepancy in the July and August Agreements, observing that the amount of the July 28, 1977, note in excess of the agreed consignment sum of $18,000.00 is $3,666.66, and that of the August 29, 1977, Agreement is $3,780.00. Here, we utilize the higher figure, reasoning that the later Agreement supersedes the former.

■ 2. The appropriate date at which we must measure both the value of the Debtor's Premises and the amount of the liens against it, for purposes of an 11 U.S. C. § 522(f)(1) calculation, is December 5, 1985, the date that the bankruptcy case was filed. *See In re Chandler*, 77 B.R. 513, 516–17 (Bankr.E.D.Pa.1987).

■ 3. Since the value of the property as of that date ($39,000.00), less the unavoidable liens (at least $32,000.00, and probably as much as $43,000.00), less the Debtor's allowable exemptions (apparently

$7,900.00, per 11 U.S.C. § 522(d)(2) and (d)(5)), results in negative number, all of Gershman's liens are avoidable. *See In re Kruger,* 77 B.R. 785, 788–89 (Bankr.C.D. Cal.1987); *Chandler, supra,* 77 B.R. at 520; and *In re Magosin,* 75 B.R. 545, 547 (Bankr.E.D.Pa.1987).

It should be noted that this disposition, on the basis of § 522(f)(1), avoids the necessity of our considering the impact of the unconstitutionality of the confessed judgments entered against the Debtor and/or Steven by Gershman, *see In re Souders,* 75 B.R. 427, 433–38 (Bankr.E.D.Pa.1987); the impact of Gershman's failure to comply with Act 6 of 1974, 41 P.S. § 101, et seq., *see id.* at 438–39; or the rather doubtful impact of the possible failure of Gershman to properly revive her judgments. *See In re Chandler,* 76 B.R. 460, 463–64 (Bankr.E. D.Pa.1987); and *Souders, supra,* 75 B.R. at 439–40.

4. Since Gershman's liens may be avoided, her status is that of a general unsecured creditor, and she has not met the difficult burden of such a creditor necessary to obtain relief from the automatic stay, hence requiring us to deny that motion. *See, e.g., In re Zeits,* 79 B.R. 222, 226 (Bankr.E.D.Pa.1987); and *Souders, supra,* 75 B.R. at 440.

An Order consistent with these conclusions shall be entered by us. The only added item thereto is our re-emphasis that, due to the delays in administration of this case due to the continuing differences between Gershman and the Debtor, it is now, in our view, becoming necessary that the Debtor's Plan be confirmed, if ever it is to be. We therefore state that the Confirmation Hearing on the Debtor's Second Modified Plan may not be continued further beyond its presently-established date of January 20, 1988.

### ORDER

AND NOW, this 24th day of December, 1987, after a consolidated trial of December 1, 1987, concerning (1) Objections of the Debtor to the Proof of Claim of Rhoda Gershman (hereinafter referred to as "Gershman") (hereinafter referred to as "the Objections"); (2) The Debtor's Motion to avoid Gershman's judgment lien (hereinafter referred to as "the Lien Avoidance Motion"); and (3) Gershman's Motion for Relief from the automatic stay (hereinafter referred to as "the Stay Motion"), and consideration of the record made therein and the Briefs of the respective parties' counsel, it is hereby ORDERED as follows:

1. The Lien Avoidance Motion is GRANTED.

2. The liens of the following judgments obtained by Gershman against the Debtor in the Court of Common Pleas of Philadelphia County are void and must be satisfied of record by Gershman within twenty (20) days of the date of this Order to the extent that they impair the Debtor's interest in the Premises:

September Term, 1977, No. 1552
November Term, 1977, No. 2369
January Term, 1978, No. 1968
July Term, 1978, No. 4835
July Term, 1978, No. 4836

Any other judgments which Gershman may have which constitute liens against the Debtor's interest in the Premises.

3. The Stay Motion is DENIED.

4. The Objections are SUSTAINED in part, and Gershman is determined to have a valid unsecured claim in the amount of $35,909.99 against the Debtor.

5. The Confirmation Hearing as to the Debtor's Second Modified Chapter 13 Plan is scheduled on

WEDNESDAY, JANUARY 20, 1988, at 10:00 A.M. in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106, *is not to be continued further.*