[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 22, 2011
JOHN LEY
CLERK

No. 10-15627
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-01394-JSM
BKCY No. 8:07-bk-04394-KRM

IN RE: J.H. INVESTMENT SERVICES, INC.,

                                                          Debtor.

_____

UNITED STATES OF AMERICA,

                                                          Plaintiff-Appellant,

versus

STEVEN OSCHER, Chapter 11 Trustee,

                                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 22, 2011)

Before BARKETT, MARCUS and COX, Circuit Judges.

PER CURIAM:

Daniel Prewett operated J.H. Investment Services, Inc. ("JHIS"), which engaged in a fraudulent real estate investment scheme. When the scheme went south, JHIS's creditors initiated an involuntary Chapter 11 case. The bankruptcy court appointed Steven Oscher as Trustee. Oscher subsequently located and sold forty real properties belonging to JHIS. The bankruptcy court ordered that one percent of the sale proceeds (the "carve-out fund") be set aside for JHIS's unsecured creditors. This fund totaled about $83,000.

The IRS has a claim against JHIS for unpaid taxes. Since this case began, the IRS has submitted several proof-of-claim forms, each superseding the previous one. Claim #6-1 asserted a $46 million unsecured claim, with approximately $26 million designated as priority. Claim #6-2 asserted a similar claim, but Claim #6-3 added a secured claim of $764. Oscher objected to Claim #6-3 on various grounds. The IRS then submitted the claim at issue here, Claim #6-4, which categorizes the IRS's entire $46 million claim as secured. (Dkt. 1-6.) Claim #6-4 does not note a general unsecured claim or an unsecured priority claim.

In December 2009, Oscher proposed a Chapter 11 liquidating plan (the "Plan"). (Dkt. 618.) The Plan expressly excludes the carve-out fund from the IRS's distribution. That same month, Oscher filed a disclosure statement indicating that the estate's assets had a value of about $750,000. (Bankr. Ct. Dkt. 619 at 25.)

Two months later, and only a week before the confirmation hearing, the IRS objected to the Plan. (Dkt. 1-8.) The IRS contended that Claim #6-4 asserted an unsecured claim, that the claim was allowed under § 502, and that the claim was entitled to priority under § 507(a)(8). Thus, the IRS argued, the Plan violated 11 U.S.C. § 1129(a)(9)(C) because it paid the carve-out fund to JHIS's general unsecured creditors before paying the IRS's priority claim in full. Oscher countered that Claim #6-4 did not assert an unsecured claim, and thus, the IRS did not have one, either priority or general. The bankruptcy court agreed with Oscher and ordered the carve-out fund distributed to JHIS's general unsecured creditors.

The IRS appealed to the district court, which affirmed the bankruptcy court. (Dkt. 35.) The district court concluded that undersecured creditors must provide notice of their intent to pursue a deficiency claim. This notice alerts the Trustee and other interested parties "that more than a secured claim may be forthcoming" and gives them an opportunity to oppose that claim. (*Id.* at 7.) But in this case, Claim #6-4 did not indicate an intent to pursue an unsecured claim. Oscher and the other creditors had neither notice of the IRS's unsecured claim nor an opportunity to oppose it. Thus, the court concluded, permitting the IRS to collect on a claim which no party had the opportunity to contest would violate due process. (*Id.* at 9.)

## DISCUSSION

Under the Bankruptcy Code (the "Code"), a claim is a right to payment, whether secured or unsecured. *See* 11 U.S.C. § 101(5)(A). Some secured creditors are undersecured—i.e., the value of their collateral is less than the full value of their claim. 11 U.S.C. § 506(a)(1). The Code treats these creditors as holding both a secured and an unsecured claim. *See id.* Section 506(a)(1) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

*Id.*; *see* Official Bankruptcy Form 10 at 2. The unsecured portion of an undersecured claim is called a deficiency claim.

In this case, it is undisputed that the IRS submitted Claim #6-4 and that it was undersecured. But the parties dispute whether Claim #6-4 properly raised or preserved the IRS's unsecured claim. The IRS contends that § 506(a)(1) automatically bifurcated Claim #6-4 into a secured and an unsecured claim and that the unsecured claim was allowed under § 502. Section 506(a)(1) also put Oscher and the other creditors on notice that the IRS would pursue its deficiency claim. Thus, the IRS argues, the district court's concerns about due process are misplaced.

4

Additionally, the IRS contends that even if it had to note its unsecured claim on Claim #6-4, its mistake in failing to do so should be excused as harmless. It claims that Oscher and the other creditors learned it would pursue a deficiency claim when the IRS objected to the Plan. Because no one objected to the validity of the IRS's unsecured claim at that time, the claim should be allowed. We reject the IRS's arguments.

Under the Code, a creditor must take an affirmative step to pursue an unsecured claim. No creditor—even an undersecured creditor—is required to pursue a claim in bankruptcy or file a proof -of-claim form. 11 U.S.C. § 501 (stating "[a] creditor . . . *may* file a proof of claim") (emphasis added). The Code merely prevents nonfiling creditors from receiving distributions from the debtor's estate. *See, e.g.*, 11 U.S.C. § 524(a); *In re Thomas*, 883 F.2d 991, 996 (11th Cir. 1989). The Federal Rules of Bankruptcy Procedure ("Rules") further underscore this point. *See* Fed. R. Bankr. P. 3002(a) (stating that an unsecured creditor "must file a proof of claim . . . for the claim . . . to be allowed."); Fed. R. Bankr. P. 3003(c)(2) (stating that "any creditor who fails to [file a proof of claim] shall not be treated as a creditor with respect to such claim for purposes of voting and distribution."). To pursue an unsecured claim under the Code, a creditor need only fill out and file a one page form.

*See* Official Bankr. Form 10. But filing this form is an affirmative step, and the decision to take that step rests squarely on the creditor's shoulders.

Contrary to the IRS's contention, § 506(a)(1) does not automatically assert a deficiency claim. An undersecured creditor is not required to pursue a deficiency claim. In fact, the Rules and Official Bankruptcy Forms suggest that when an undersecured creditor does not note an unsecured claim on its proof of claim, it has decided not to pursue that claim. Under Rule 3001, a proof of claim must "conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). The relevant proof of claim form is Official Bankruptcy Form 10 ("Form 10"). Form 10 permits a creditor to note a secured claim and the amount of that secured claim. However, in the same box and right next to the line for the amount of the secured claim, Form 10 asks for the amount of the claim which is unsecured.[1] Official Bankr. Form 10, Box 4. Moreover, the instructions to Form 10 clearly explain that an undersecured creditor should note both the secured and unsecured value of its claim. Official Bankr. Form 10 at 2 ("The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim."). Thus, to substantially comply with Form 10, a

---

[1] Box 5 permits a creditor to note if any of its claims are entitled to priority under § 507 and the amount of the claim entitled to priority. The IRS did not indicate that any of its claim was entitled to priority or the amount of that claim.

creditor should note the portion of its claim it believes is unsecured. When an undersecured creditor does not, the Trustee and other parties can conclude that the creditor has decided not to pursue its deficiency claim.

Requiring an undersecured creditor to signal its intent to pursue a deficiency claim serves an important notice function. Under § 502, a proof of claim is allowed "unless a party in interest . . . objects." 11 U.S.C. § 502(a). But parties do not make objections when they do not have to. A Form 10 which evinces an undersecured creditor's intent to pursue a deficiency claim puts the interested parties on notice of that claim, *see In re Neptune Pool Serv., Inc.*, 144 B.R. 926, 927 (Bankr. M.D. Fla. 1992), and gives those interested parties an opportunity to object to it, Fed. R. Bankr. P. 3007. But when a Form 10 does not evince such an intent, the Trustee and other creditors have no reason to object.

The Code does not force creditors to pursue deficiency claims. The motive for a creditor's decision is irrelevant as far as the Trustee is concerned. The Trustee has no duty to ask the undersecured creditor why he elected not to pursue a deficiency claim. *See In re Padget*, 119 B.R. 793,798 (Bankr. D. Co. 1990) ("[The Trustee] should not, and is not charged with the obligation to, examine a claim with a purpose and view to increasing the claim or improving a claimant's status over that asserted by other creditors.")

We find further support for our conclusion in the House Report which accompanied the adoption of the Code. In describing § 501, the Report says:

> This section governs the means by which creditors . . . present their claims . . . to the court. . . . This subsection is permissive only, and does not require filing of a proof of claim by any creditor. It permits filing where some purpose would be served, such as where . . . a creditor with a lien is undersecured and asserts a claim for the balance of the debt owed him (his unsecured claim, as determined under proposed 11 U.S.C. 506(a))."

H.R. Rep. No. 95-595, at 315, 1978 U.S.C.C.A.N. 5963, 6307 (1978). The report goes on to say that:

> In general, . . . unless a claim is listed in a Chapter 9 or Chapter 11 case and allowed as a result of the list, a proof of claim will be a prerequisite to allowance for unsecured claims, including priority claims and the unsecured portion of a claim asserted by the holder of a lien.

*Id.* It logically follows that Congress intended an undersecured creditor's proof of claim to address that creditor's unsecured claim.

The IRS has cited no cases holding that § 506(a)(1) automatically asserts a deficiency claim.[2] In fact, in the cases the IRS cites, the secured creditors substantially complied with Form 10's requirements by noting their unsecured claims. *See, e.g.*, *In re Rowell*, 421 B.R. 524, 528, 535 (Bankr. D. Minn. 2009); *Demarah v.*

---

[2] It is unclear from the factual discussion in *In re Healis*, 49 B.R. 939, 940-42 (Bankr. M.D. Pa. 1985), whether the IRS noted both a secured and unsecured claim. But, it is clear that the *Healis* court did not address this specific issue.

*United States*, 188 B.R. 426, 427-29 (E.D. Cal. 1993). Additionally, an undersecured creditor who initially fails to note a deficiency claim may seek leave to amend its proof of claim. *In re S. Atl. Fin. Corp.*, 767 F.2d 814, 819 (11th Cir. 1985). Amendments asserting deficiency claims are among those usually allowed. *See, e.g.*, *In re Haack*, 165 B.R. 501, 504 (Bankr. M.D. Fla. 1994).

For the above stated reasons, we conclude the IRS did not assert an unsecured claim on Claim #6-4. On its face, Claim #6-4 indicated the IRS's collateral was worth the full value of its claim. (Dkt. 1-6.) Surely the IRS had no reason to believe that JHIS's assets were worth $46 million. But even if it did, the IRS learned that it could not receive the full value of its secured claim in December 2009 when Oscher reported that JHIS's assets totaled no more than $750,000. After that date, the IRS took no affirmative step to properly present its unsecured claim to the bankruptcy court as required by the Code and the Rules.[3]

The IRS also contends that its objection to the Plan sufficiently notified the other parties that it would pursue its deficiency claim. But the IRS objected to the

---

[3] After the bankruptcy court concluded that Claim #6-4 did not assert an unsecured priority claim, the IRS filed Claim #6-5. (Dkt. 1-15 at 2.) This claim showed that the IRS had a secured claim worth $148,000, an unsecured priority claim for approximately $26 million, and a general unsecured claim for $20 million. (*Id.*) The IRS argued that Claim #6-5 properly amended Claim #6-4 to assert its deficiency claim. (*Id.*) Oscher opposed the IRS saying that Claim #6-5 was untimely. (Dkt. 1-17.) Unfortunately, the record does not contain the bankruptcy court's resolution of this issue, and at any rate, the IRS has not raised the disallowance of Claim #6-5 on appeal.

Plan because it did not address its unsecured priority claim as required by 11 U.S.C. § 1129(a)(9)(C). (Dkt.108 at 1.) That provision assumes the objecting party has an allowed unsecured priority claim. But because Claim #6-4 did not properly assert an unsecured claim, the IRS's objection was invalid. *See* Rule 3003(c)(2).[4] The IRS also argues that no one objected to the validity of its unsecured claim. But, Oscher and the other creditors did not have to because no such claim was before the court.

As the district court noted, distributing the carve-out fund to the IRS would deprive Oscher and JHIS's other creditors of due process as they had neither notice of nor an opportunity to contest any unsecured claim by the IRS. Therefore, the judgment of the district court is due to be affirmed.

AFFIRMED.

---

[4] The IRS argues, in its reply brief, that Rule 3018(d) permits it to vote as both a secured and unsecured creditor. However, that rule applies only to creditors "whose claim has been allowed in part as a secured claim and in part as an unsecured claim." Fed. R. Bankr. P. 3018(d). Because we conclude the IRS did not have an allowed unsecured claim, Rule 3018(d) does not apply.

10