**In re Arlene F. MOLITOR, Debtor.**

**Bankruptcy No. 91–05673.**

United States Bankruptcy Court,
D. North Dakota.

Sept. 13, 1991.

Phillip D. Armstrong, Minot, N.D., Trustee.

Max D. Rosenberg, Bismarck, N.D., for debtor Arlene Molitor.

Michael L. Wagner, Dickinson, N.D., for Fred Dobitz.

Bruce A. Selinger, Dickinson, N.D., for Ronald Dubisar.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter is before the court to consider confirmation of Debtor Arlene Molitor's Chapter 13 plan as modified. The Debtor filed a Chapter 13 petition on June 27, 1991, in response to the foreclosure of the contract for deed on May 9, 1991, by Ronald and Kay Dubisar (Dubisar). The Debtor's plan basically provided that the secured creditors will receive their value of collateral, while the unsecured claims will share in the residual. Two classes of creditors, Dubisar (Class I), and Fred and Violet Dobitz (Dobitz) (Class II) objected to the Debtor's plan and a confirmation hearing was held on August 26, 1991. At the contested confirmation hearing, the Debtor filed a first modification of her Chapter 13 plan. Both Dubisar and Dobitz raised the objection that the Debtor's plan may not modify the rights of her creditors and that the Debtor's plan does not propose to cure prepetition defaults as required by 11 U.S.C. § 1322(b). The parties were requested to file simultaneous briefs before this matter was taken under advisement on August 26, 1991.

In 1975 Dubisars entered into a contract for deed by which they agreed to sell 800 acres of farmland situated in Slope County, North Dakota to the Debtor for the sum of $185,760.00. Terms were $45,000.00 down with a first year payment of $12,486.54 and annual payments thereafter of $13,806.16 in each succeeding year until paid. The contract carried an interest rate of 8%. The final payment is due under the contract on January 15, 1995.

The Debtor failed to make the payment due in January 1991 and as of the date of petition filing the principal sum of $64,-765.00 plus interest accrued of $5,933.00 remained outstanding.

In 1974 the Dobitz' entered into a contract for deed for the sale to the Debtor of 1,120 acres of farmland situated in Slope County, North Dakota for $231,000.00. Terms were twenty annual payments of $20,028.00 at 6% interest with the final payment due on February 2, 1994. As with the Dubisar contract, the Debtor failed to make the 1991 contract payment to Dobitz and as of the date of petition filing remained obligated in the principal sum of $70,000.00 plus interest of $6,020.00.

■ On June 27, 1991, the Debtor filed a petition seeking relief under Chapter 13 of the Bankruptcy Code. Under the terms of her Chapter 13 plan, the Debtor proposes to pay the outstanding balance owed to both Dubisar and Dobitz in 15 annual installments with interest at 7.5% per annum and 9.0% per annum, respectively. The principal objection made by both Dubisar and Dobitz is that the Debtor's plan does not meet the requirements as set out in 11 U.S.C. § 1322(b). At the confirmation hearing, counsel for the Debtor argued that section 1322(b) should only apply in situations dealing with mortgages and not contracts for deed. This argument is without merit since under North Dakota law, both mortgages and contracts for deed are treated the same. *In re Faiman*, 70 B.R. 74 (Bankr.D.N.D.1987). The relevant subsections of section 1322 at issue are subsections (b)(2), (b)(5), and (c). Each subsection will be addressed separately.

1.

■ Dubisar and Dobitz, in their briefs in support of their objection to the Debtor's Chapter 13 plan confirmation relied upon 11 U.S.C. § 1322(b)(5) stating that subsection (b)(5) is inapplicable. Subsection (b)(5) provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

In *In re Taddeo*, 685 F.2d 24, 26–27 (2nd Cir.1982), the court, in great length, discusses the history and policy behind section 1322(b)(5) and concluded that the intent of section 1322(b)(5) was to permit the cure and de-acceleration of secured long-term residential debt accelerated prior to filing of a petition for Chapter 13 relief. Various courts have determined that in order for a debt to be considered long term, the last payment of the loan must become due after the date on which the final payment under the plan is due. *See Grubbs v. Houston First American Sav. Ass'n*, 730 F.2d 236 (5th Cir.1984); *In re Schafer*, 99 B.R. 352 (W.D.Mich.1989); *Grundy National Bank v. Johnson*, 106 B.R. 95 (W.D.Va.1989).

In the present case, the modified plan submitted by the Debtor would extend the payment of Dubisar's contract for deed from an approximate due date of January 1995 to February 2007, and the Dobitz' due date of February 1994 to March 2007. Thus, section 1322(b)(5) does not apply since the last payment of the contracts for deed clearly expires well in advance of the date on which the final payment under the plan will be due. Furthermore, the court in *In re Hildebran*, 54 B.R. 585 (Bankr.D.Ore. 1985), determined that where a debtor wanted to convert a short term obligation into a long term obligation no payment beyond the term of the plan can be involuntarily imposed on a creditor without the cure provision of section 1322(b)(5).

Therefore, the Debtor may not cure her default as proposed by her Chapter 13 plan since it would violate the original terms of the contracts for deed. Moreover, permitting the Debtor to extend the note maturity date well beyond the plan term under the provisions of section 1322(b)(5) would violate the limitation period of a Chapter 13 plan as provided under section 1322(c), discussed below.

### 2.

■ Although subsection (b)(5) does not apply in the instant case, subsection (b)(2) clearly allows the Debtor to modify the terms of the debt owed to her creditors. Subsection (b)(2) states:

> (b) Subject to subsections (a) and (c) of this section, the plan may—

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

The application of subsection (b)(2) turns on whether the Dubisar and Dobitz claims are secured only by a security interest in real property that is the Debtor's principal residence. In addressing this issue, focus has been placed on the Debtor's actual use of the subject property. For example, in *In re Ramirez*, 62 B.R. 668 (Bankr.S.D.Cal. 1986), the court determined the Debtor's actual use of her property collateral for her creditor, constituted more than a residential property since the property was rented out to a third party. *Cf. In re Glenn*, 760 F.2d 1428 (6th Cir.1985).

In the present case the Debtor's debts to Dubisar and Dobitz are not secured by the Debtor's residence, but rather secured by farmlands as indicated by her rental of said property. Although the farmlands are rented to a family member at a price lower than the fair market value, it is nevertheless a rental property and therefore the collateral is deemed more than a residential property. Thus, "the debtor is not limited under Chapter 13, to cure and reinstate under section 1322(b)(5), but may also use section 1322(b)(2) to modify the terms of the debts." *Grundy Nat. Bank v. Johnson*, 106 B.R. 95, 97 (Bankr.W.D.Va.1989); *see also, Justice v. Valley Nat. Bank*, 849 F.2d 1078, 1082 (8th Cir.1988); *In re Ramirez, supra* at 670; *In re Foster*, 61 B.R. 492, 494–95 (Bankr.N.D.Ind.1986).

While section 1322(b)(2) provides the Debtor the right to modify her contractual obligations, like section 1322(b)(5), it is also subject to the provisions of section 1322(c).

### 3.

It is permissible for the Debtor to modify the contractual rights under section 1322(b)(2) of Dubisar and Dobitz; this court, however, believes there are limits to the authorization placed on the Debtor by another Code section. All provisions of section 1322(b) must comply with the requirements set forth in section 1322(c) which provides:

> (c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

■ The Congressional intent behind section 1322(c) was to neutralize oppressive creditors and avoid involuntary servitude; therefore, Congress by legislative mandate, will not allow the courts to approve any plan that exceeds a five year period. A plan modification under provisions of section 1322(b) may not provide for payments over a period that expires after three years beyond the time that the first initial payment under the *original confirmed plan* was due, unless the court, for cause,[1] allows for a longer period, but the court may not approve a repayment that was longer than a five year period. 5 *Collier on Bankruptcy* ¶ 1322.15 (15th ed. 1982). *See, e.g., In re Thomas*, 123 B.R. 552, 554 (Bankr.W.D.Tex.1991) (five year Chapter 13 plan should not be confirmed because total payment under the plan would exceed five years when combined with plan in im-

---

**1.** *See* Kane, *Chapter 13: "Cause" for Extension Under Section 1322(c)*, 5 Bank.Dev.J. 249 (1987). (Discusses three approaches to what constitutes the "cause" necessary under section 1322(c) to extend the debtor's plan to five years.)

mediately preceding Chapter 13 case); *In re Harmon,* 72 B.R. 458, 462 (Bankr. E.D.Pa.1987) (the curing of any default is subject to the maximum plan repayment periods under section 1322(c), and may not exceed the five years under any circumstances); *In re Henstra,* 75 B.R. 260, 263 (Bankr.D.Minn.1986) (confirmation denied because plan would exceed the five year limitation); *In re Ramirez,* 62 B.R. 668, 669 (permitting debtor to extend note beyond the plan longer than five years violated the provisions of section 1322(c)); *In re Hildebran, supra* at 586–87 (the debtor's plan for a term of five years, provides for payments over a period of twenty-five years is clearly longer than the statutory five year limitations imposed by section 1322(c)).

Thus, section 1322(c) requires that the Debtor's plan must be limited to no longer than five years. If the Debtor were allowed to modify her plan or cure her default and provide for payments beyond the term of the Chapter 13 plan, this would render section 1322(c) meaningless.

Dubisar and Dobitz in their briefs, relying upon *In re Scott,* 121 B.R. 605 (Bankr. E.D.Okla.1990), stated that the Debtor has only two options in treating her secured creditors. The Debtor may either (1) pay creditors in full within a three to five year plan, or (2) cure the default within the three to five year plan and resume paying the yearly contractual obligations. Although the creditors may well be correct in this remedy assessment, this court does not believe, from the testimony given at the confirmation hearing, that the Debtor would be able to meet either option, given the state of her finances. Inability to satisfy either of these options does not, however, provide a legal basis for ignoring the clear stricture of section 1322(c).

Accordingly, based on the foregoing, the court finds that the confirmation of the Debtor's proposed Chapter 13 plan, as amended on August 26, 1991, shall be DENIED.

SO ORDERED.