**In re Syed M. HUSSAIN, Debtor.**

**No. 99–62058(RTL).**

United States Bankruptcy Court,
D. New Jersey.

July 17, 2000.

---

John F. Bracaglia, Jr., Cohn, Bracaglia & Gropper, P.C., Somerville, NJ, for Debtor.

Brian F. Breen, Begley, McCloskey & Gaskill, Moorestown, NJ, for First Union National Bank.

Milica A. Fatovich, Fein, Such, Kahn & Shepard, P.C., Parsippany, NJ, for Citicorp Mortgage.

Mark S. Lichtenstein, Herrick, Feinstein LLP, Princeton, NJ, for Ocwen Federal Bank, FSB, Loan Servicer for LaSalle National Bank, Trustee.

Mario A. Serra, Jr., Stern, Lavinthal, Frankenberg, Norgaaed & Kapnick, LLC, Englewood, NJ, for Alliance Mortgage Company.

## OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

Before this court is the contested confirmation of the chapter 13 plan proposed by debtor, Syed M. Hussain (the "Debtor"). Debtor's 60 month plan sought to modify the original terms of several mortgage loans by reducing the interest rates and extending the maturity dates by twenty to thirty years on mortgages secured by his residence and four rental properties. The various mortgage holders opposed the proposed modifications of the mortgage obligations. For the reasons set forth below, the court will deny confirmation of Debtor's chapter 13 plan because it violates 11 U.S.C. § 1322(d) of the Bankruptcy Code [1] which limits plans to five years. The following constitutes the court's findings of fact and conclusions of law.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §§ 157(a) and (b)(1) and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 referring all cases under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (L) concerning confirmation of plans.

## FACTS

The Debtor filed a petition under chapter 13 of the Bankruptcy Code on October 25, 1999. According to the Debtor's bankruptcy schedules he owns a one-half interest (with his non-filing spouse) in various parcels of real property located in New Jersey. One piece of property is the Debtor's residence, while the other four parcels are investment properties utilized for rental income. The Debtor's bankruptcy filing was precipitated by the pre-petition maturity, and imminent foreclosure, of one of the Debtor's mortgages. Apparently the Debtor could not obtain alternative financing on this property, nor could he afford to satisfy the entire obligation. In addition, the Debtor had fallen behind on the mortgage payments for several of the other investment properties.

At the same time the Debtor filed his bankruptcy petition and schedules, he also filed his plan of reorganization (the "Plan"). The Plan outlined the Debtor's suggested treatment for each of the properties. The Plan provided for the Debtor to pay $429.17 per month for sixty months and to modify the various mortgage obligations to be paid outside the Plan. Because of the significant equity in the properties, the Plan provided for a one hundred percent dividend to unsecured creditors. The Debtor's petition and schedules, as well as the Plan and the various objections filed by the mortgage holders in response to the Plan, reveal the following information with respect to each of the Debtor's properties.[2]

---

**1.** All statutory references contained herein are to the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless otherwise indicated.

**2.** For ease of reference, the following composite chart provides relevant information for each of the Debtor's mortgaged properties.

| Location of Property | Type of Property | Fair Market Value | Lien Holder(s) | Amount of Liens | Amount of Equity |
|---|---|---|---|---|---|
| 1864 Hillcrest Ave. Union, NJ | Rental Property | $170,000 | Alliance Mtg. (1st) and Mid-states (2nd) | $150,000 | $ 20,000 |

*Union, New Jersey (Hillcrest Avenue)*

Alliance Mortgage Company ("Alliance") holds a first mortgage on the Debtor's rental property located at 1864 Hillcrest Avenue in Union, New Jersey. In his schedules, the Debtor estimated that he owed approximately $150,000 on this property that has a fair market value of $170,000. The Debtor's Plan proposed to modify the original terms of Alliance's mortgage to reduce the interest rate from the current 7–1/2 percent adjustable rate to seven percent and to extend maturity for thirty years from confirmation.

Alliance filed an objection to confirmation claiming that the Plan sought to improperly modify its rights in violation of § 1322(d); that the value of property to be distributed under the Plan is less than the amount of its claim in violation of § 1325(a)(5)(B)(ii); and that the Plan failed to comply with the provisions of Title 11. Thereafter, on April 4, 2000 the Debtor filed a first amended plan (the "Amended Plan") that proposed to pay Alliance its original contract rate of interest, with an appropriate escrow for taxes and insurance. The only modification under the Amended Plan would be the thirty year extension of the maturity date. In a letter brief received by the court on April 26, 2000, Alliance once again objected to confirmation of the Amended Plan, arguing that "the Debtor is essentially rewriting or attempting to refinance [s]ecured [c]reditor's loan."

*Union, New Jersey (Pleasant Parkway)*

Citicorp Mortgage Corp. ("Citicorp") holds the first mortgage on the Debtor's rental property located at 2058 Pleasant Parkway in Union, New Jersey. According to Debtor's schedules, the property is worth approximately $150,000, and Citicorp has a lien of about $85,000. The Plan proposed to modify the original terms of the mortgage to decrease the interest rate to seven percent and to extend payment for thirty years from confirmation.

Citicorp filed an objection to confirmation asserting that Debtor failed to provide for payment of pre-petition arrears; the Plan sought to improperly modify the original terms of the mortgage by decreasing the interest rate to seven percent from the variable interest rate provided for in the original note (currently 7.75%, up to a maximum rate of 14.25%) and to extend the loan maturity for an additional seventeen years in violation of § 1322(d). In addition, Citicorp objected to Debtor's use of rental income from the property to fund the Plan because Citicorp had an absolute assignment of rents.[3] See *First Fidelity Bank v. Jason Realty, L.P. (In re Jason Realty, L.P.)*, 59 F.3d 423 (3d Cir.1995)(Under New Jersey law, an assignment of rents vests the mortgagee with title to the rents and the mortgagor with a license to collect the rents that expires upon default. After a default by the debtor the rents are no longer property of the estate and may not be used as a funding source for a debtor's plan of reorganization.). The Amended Plan's treat-

| 2058 Pleasant Pky. Union, NJ | Rental Property | $150,000 | Citicorp Mtg. | $ 85,000 | $ 65,000 |
|---|---|---|---|---|---|
| 10–12 Oregon St. Maplewood, NJ | Rental Property | $190,000 | First Union Nat'l. Bank | $ 93,000 | $ 97,000 |
| 169 Harper Ave. Irvington, NJ | Rental Property | $200,000 | LaSalle Nat'l. Bank | $ 95,000 | $105,000 |
| 592 Sudbury Lane Bridgewater, NJ | Residence | $400,000 | First Nationwide Mtg. (1st) and Midstates (2nd) and IRS (Tax Lien) | $331,000 | $ 69,000 |

3. Ultimately the court was not required to decide the issue of the assignment of rents because Citicorp withdrew, without prejudice, its objection to the use of rents at the confirmation hearing.

ment of Citicorp's secured claim contemplated no changes from the original terms of the loan, except to extend payment for thirty years from confirmation.

*Maplewood, New Jersey*

First Union National Bank ("First Union") holds the first mortgage on the rental property located at 10–12 Oregon Street in Maplewood, New Jersey. Debtor estimated the fair market value of the property to be $190,000. First Union is owed approximately $93,000 on its mortgage. The Plan sought to modify the original terms of the mortgage to decrease the interest rate to seven percent and to extend payment for twenty years from confirmation. Because no objection was received from First Union prior to the Debtor filing his Amended Plan, there was no change in the proposed treatment. However, shortly after the Amended Plan was submitted, First Union filed its objection asserting that no provisions of the Bankruptcy Code permitted the Debtor to modify the interest rate and duration of the consensual mortgage in the manner being attempted by the Debtor. First Union maintained that Debtor's effort to treat First Union's claim both inside and outside the Amended Plan was impermissible.

*Irvington, New Jersey*

LaSalle National Bank ("LaSalle") holds the first mortgage on the Debtor's rental property in Irvington, New Jersey. The property is valued at approximately $200,000 with LaSalle holding a lien of approximately $95,000. The plan proposed to modify the original terms of the mortgage to lower the interest rate from 13–3/4% to seven percent and to extend the maturity date by twenty years.

LaSalle filed an objection to confirmation based on the proposed treatment of its claim under the Plan. Specifically, LaSalle contended that because the Debtor's mortgage had matured pre-petition on April 22, 1998, the Debtor's only option was to cure the default by satisfying LaSalle's entire allowed secured claim during the sixty months of the Plan, not over twenty years as advocated by Debtor[4]. On or about July 27, 1999, LaSalle instituted a foreclosure action in New Jersey state court, but a judgment was not obtained prior to the Debtor's bankruptcy filing. Under the Amended Plan, LaSalle would be paid the full amount of its allowed claim with 8.625% interest over twenty years from confirmation.

*Bridgewater, New Jersey*

First Nationwide Mortgage ("First Nationwide") holds the first mortgage on the Debtor's residence located in Bridgewater, New Jersey. Midstates Resources Corp. ("Midstates") holds a second mortgage on this property. The Midstates' mortgage is also cross-collateralized with a second mortgage on the Hillcrest Avenue property in Union, New Jersey. Debtor values his residence at $400,000 and the liens on the property are approximately $331,000[5]. Under the Plan, First Nationwide's mortgage would be paid in accordance with the original terms of the mortgage. Debtor's Plan would alter Midstates' mortgage to reduce the interest rate to seven percent and to extend payment for twenty years from confirmation.

No objection to confirmation was received from First Nationwide. Midstates, however, objected to confirmation claiming

4. In its objection to confirmation, LaSalle contended that because Debtor's obligation to it matured pre-petition and must be fully satisfied within the five year life of the Plan as mandated by § 1322(d), the Debtor could not propose a confirmable plan. It is LaSalle's position that the Debtor cannot satisfy the feasibility requirements of the Bankruptcy Code because the Debtor does not have sufficient income to pay LaSalle's obligation, as well as the other mortgage commitments. Ci-

ticorp also asserted the same feasibility argument in its objection to confirmation.

5. According to the Debtor, First Nationwide is owed approximately $233,000 on its first mortgage and Midstates' has a claim of about $70,000. Debtor also owes $28,000 to the Internal Revenue Service for a secured tax claim.

that the Plan's proposed treatment violated § 1322(d) because Debtor sought to extend the maturity date eight years. Midstates also complained that the reduction in the interest rate from ten percent to seven percent was unreasonable and below current market rates; that the Plan did not provide for Midstates' arrearage claim and that the value of property to be distributed under the Plan was less than the amount of its claims. After reviewing Midstates' objection, Debtor's Amended Plan sought to pay Midstates' second mortgage in full with interest at the rate of 8.25% over twenty years.

## DISCUSSION

■ In a chapter 13 case, the debtor may propose a plan of reorganization that attempts to modify the rights of a secured creditor under § 1322(b)(2) or the debtor may propose a plan to cure any defaults and maintain payments pursuant to the original agreement between the parties in accordance with § 1322(b)(5) of the Code. These are the only options available to a chapter 13 debtor who has fallen behind on a mortgage, but wishes to retain his or her encumbered property through bankruptcy. In the instant case, Debtor filed chapter 13 because he had fallen several months behind on mortgage payments for various rental properties. Debtor's Amended Plan proposed to cure the defaults over five years. In addition, Debtor sought to modify the rights of the mortgage lenders (the "Lenders") by altering the original mortgage terms to reduce interest rates and extend the maturity dates of the various loans.

The Lenders who objected to confirmation of the Debtor's Amended Plan, do not dispute that § 1322(b)(2) gives the Debtor the authority to modify the interest rates on their secured claims. The Lenders object to the treatment proposed by the Debtor wherein the Debtor seeks to extend the maturity dates of their loans. The Lenders assert that if the Debtor modifies their claims pursuant to § 1322(b)(2), he must pay their claims in full, before the final payment under his chapter 13 plan, as mandated by § 1322(d) of the Bankruptcy Code.

In response to the Lenders' objections, Debtor submitted a letter brief wherein he asserted the ability to modify the mortgage claims pursuant to § 1322(b)(2). Debtor argued that he "is not proposing to pay the[ ] mortgages through the plan, but to modify the terms and pay them outside of his plan. Therefore, the five-year limitation in Code Section 1322(c) (sic, should be § 1322(d)) for payments through the plan is inapplicable."

The Bankruptcy Code does not authorize a chapter 13 debtor to cure defaults and simultaneously modify secured claims. Instead, the Code permits a chapter 13 debtor to propose a plan that utilizes one or the other of these two options. In his treatise on chapter 13, Judge Keith M. Lundin, a leading authority on chapter 13 bankruptcy law, stated that "[e]ven if the debtor can modify a secured claim, absent consent of the secured claim holder or surrender of the collateral, a Chapter 13 debtor must do one of two things with a real estate secured claim: either pay the present value of the secured claim in full during the life of the plan or cure the default and maintain payments during the life of the plan." 1 KEITH M. LUNDIN, *CHAPTER 13 BANKRUPTCY* § 4.47, at 4–65 (2d ed.1994) (footnotes omitted). Because Debtor sought to take advantage of both the cure and modification provisions, which is contrary to the plain meaning of the Bankruptcy Code, Debtor's Amended Plan must be denied confirmation. Consistent with this opinion, Debtor must decide whether it is feasible, and in his best interests, to modify the secured mortgage claims and pay the present value of the claims in full through the plan, or to cure the defaults through his plan and reinstate the original mortgage contracts. A bankruptcy court cannot confirm a chapter 13 plan that attempts to both cure and modify secured claims at the same time.

## MODIFICATION PURSUANT TO § 1322(b)(2)

■ Section 1322(b)(2) provides that "the plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, ..." [6] This section of the Code permits a chapter 13 debtor to do something he or she could not otherwise do outside of bankruptcy. It allows a debtor, who has defaulted on his or her mortgage, to essentially rewrite the terms of the mortgage loan without the consent of the creditor.

■ In order for a debtor to take advantage of § 1322(b)(2)'s modification provision, the debtor must satisfy all other Code requirements. Specifically, any modifications proposed by a debtor through the chapter 13 plan must comply with the statutory limitations of § 1322(d).[7] Section 1322(d) provides that "[t]he plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years." [8] As will be explained in more detail below, any secured claims modified by a debtor under § 1322(b)(2) must be satisfied in full before the final payment under the chapter 13 plan.

In support of confirmation, Debtor cited the bankruptcy court decision in *In re Evans*, 66 B.R. 506 (Bankr.E.D.Pa.1986), *aff'd*, 77 B.R. 457 (E.D.Pa.1987). Debtor believes that court's decision supports his contention that the Bankruptcy Code, and specifically §§ 1322(b)(2) and 1325(a)(5), permits him to modify the terms of the mortgages, while paying the Lenders' claims outside the Amended Plan over a twenty to thirty year period, making the statutory limitations of § 1322(d) inapplicable to his bankruptcy case. The Debtor's reliance on the *Evans* decision as support for his proposed treatment of the Lenders' claims is misplaced. Contrary to the Debtor's assertion, a chapter 13 debtor cannot modify a claim under a chapter 13 plan and then argue that the claim is being paid outside the plan. Any attempt by a debtor to modify a claim pursuant to

---

**6.** The so-called antimodification provisions of § 1322(b)(2) do not apply in the instant case because the Debtor's Plan does not propose to modify the first mortgage on his residence. None of the Debtor's other mortgage obligations are secured solely by the Debtor's residence. The Third Circuit Court of Appeals has "held that section 1322(b)(2)'s antimodification clause does not apply when the creditor has an additional security interest in collateral other than the real property in which the debtor resides because section 1322(b)(2)'s express terms cover claims secured only by a security interest in the debtor's principal residence." *Hammond v. Commonwealth Mortgage Corp. (In re Hammond)*, 27 F.3d 52, 55–56 (3d Cir.1994) (*citing Sapos v. Provident Inst. of Sav.*, 967 F.2d 918, 925–26 (3d Cir.1992) and *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 128 (3d Cir.1990)). See also *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 609 (3d Cir.2000).

**7.** Chapter 13 debtors must remember that in addition to the limitation of § 1322(d), any modification of a secured claim pursuant to § 1322(b)(2) must satisfy two other prerequisites of the Bankruptcy Code. First, the debtor's plan must provide for the secured credi-

tor to retain its lien until its claim is fully satisfied. Secondly, the value of the property to be distributed under the plan on account of the secured claim must not be less than the allowed amount of the claim. See § 1325(a)(5)(B). Even though certain of the Lenders raised objections based upon § 1325(a)(5)(B), this component of their objections was not before the court at the confirmation hearing, as the parties had previously resolved this aspect of their objections.

**8.** When reviewing § 1322(d), the House Judiciary Committee Report provides the following as the rationale underlying the maximum five year plan period. "[I]n certain areas of the country, inadequate supervision of debtors attempting to perform under wage earner plans have (sic) made them a way of life for certain debtors. Extensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing to involuntary servitude...." H.R.Rep. No. 595, 95th Cong., 1st Sess. 117 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963.

§ 1322(b)(2), requires compliance with the statutory limitations of § 1322(d).

The *Evans* decision does not support the Debtor's conclusion. The *Evans* court held that the chapter 13 debtor had the option of dealing with an IRS secured tax claim outside of the plan. What Debtor failed to recognize from the court's opinion is that Mr. Evans was not proposing to modify the IRS's secured claim under the plan, but simply seeking to pay the claim outside his plan. The *Evans* court also concluded that "as long as a debtor does not attempt to modify the rights of secured parties per 11 U.S.C. § 1322(b)(2) in his plan, by curing arrearages therein or in any other respect, he clearly has the option of not dealing with the secured claim at all in his plan." *Id.* at 509–10. Moreover, the *Evans* court found that "[e]xercising the option to treat a secured claim 'outside' the Plan will not prejudice the secured creditor, who will retain his security and his unmodified claim despite the bankruptcy filing, or exactly as if there had been no filing." *Id.* at 510.

■ It is clear that § 1322(d) "requires that the repayment of any claim modified pursuant to Code § 1322(b)(2) must be completed within three years, unless the Court, for cause, approves a five year plan." *In re Javarone,* 181 B.R. 151, 154–55 (Bankr.N.D.N.Y.1995). More importantly, under no circumstances may a bankruptcy court confirm a chapter 13 plan that extends payment beyond the maximum five year statutory limitation set forth in § 1322(d). See *Bank Am. Hous. Servs. v. Nenonen (In re Nenonen),* 232 B.R. 803, 806 (M.D.Fla.1998); *Citizens Trust & Sav. Bank v. Schafer (In re Schafer),* 99 B.R. 352, 354 (W.D.Mich.1989); *Grundy Nat'l Bank v. Johnson,* 106 B.R. 95, 96 (W.D.Va.1989); *In re Richardson,*

192 B.R. 224, 227 (Bankr.S.D.Cal.1996); *In re Jackson,* 189 B.R. 213, 214 (Bankr. M.D.Ala.1995); *In re Dinsmore,* 141 B.R. 499, 504 (Bankr.W.D.Mich.1992); *In re Strober,* 136 B.R. 614, 624 (Bankr.E.D.N.Y. 1992); *In re Molitor,* 133 B.R. 1020, 1023 (Bankr.D.N.D.1991); *In re Nguyen,* 96 B.R. 185, 187 (Bankr.E.D.Ark.1988); *In re Ramirez,* 62 B.R. 668, 670 (Bankr.S.D.Cal. 1986). Debtor's attempt to confirm a plan that impermissively modifies various real estate secured claims to extend maturity for twenty to thirty years is clearly contrary to authority.

The bankruptcy court in *In re Pruett,* 178 B.R. 7, 9 (Bankr.N.D.Ala.1995) held that the chapter 13 debtor had two viable options with respect to treatment of real estate secured claims in chapter 13, the debtor could "retain the same interest rate and make the same payments of principal and interest called for by the original note during the life of the plan and during such further period of time as necessary to pay in full the secured claim as valued by the court. Alternatively, the debtor may change the interest rate and the amount of the monthly payments, but if he does so, the amount of the allowed secured claim must be paid within the five year period." [9] "If a Chapter 13 debtor were allowed to modify a secured claim and provide for payment beyond the term of the plan, § 1322(c) [now § 1322(d)] would be rendered meaningless." *In re Legowski,* 167 B.R. 711, 716 (Bankr.D.Mass.1994) (citations omitted) (if an obligation is modified under the plan, §§ 1322(c) and 1325(a)(5) require that payment on the allowed secured claim be completed over the life of the plan). See also *In re Molitor,* 133 B.R. at 1023; *In re Nepil,* 206 B.R. 72, 77 (Bankr.D.N.J.1997) ("A confirmable Chapter 13 plan must still pay judgment hold-

**9.** The bankruptcy court in *In re Scott,* 121 B.R. 605, 608 (Bankr.E.D.Okla.1990), previously reached the same conclusion as the court in *In re Pruett* and this court when it ruled that "a debtor is faced with two alternatives in treating a secured creditor. A debtor may either modify a secured claim in some

fashion and treat that secured claim over the term of the Plan or cure any default or arrearage currently due and owing on an obligation over the term of the Plan, simultaneously satisfying the normal payment schedule prescribed under the original note and mortgage."

ers [or any secured creditor holding a claim that has been modified under a chapter 13 plan] their claim over the life of the plan.").

## CURE AND MAINTENANCE PURSUANT TO § 1322(b)(5)

If it is not feasible for a chapter 13 debtor to comply with the limitations of § 1322(d) because he or she cannot afford to satisfy the entire allowed secured claim within the life of the plan, the chapter 13 debtor has another alternative. The debtor may propose a plan that cures the arrearages through the plan, while all payments after the bankruptcy filing are made in accordance with the original terms of the mortgage note and contract.

■ Section 1322(b)(5) states that a chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." [10] This section allows a chapter 13 debtor to cure any defaults that have occurred pre-petition, even if the mortgage holder has foreclosed on the property or a right to cure does not exist outside of bankruptcy.

Because many chapter 13 debtors do not have the financial wherewithal to satisfy their entire mortgage obligation within five years as required by § 1322(d), utilization of the "cure and maintenance" provision of § 1322(b)(5) is the only reasonable alternative available to debtors hoping to save their real property. As Judge Lundin noted:

> If the secured portion of the mortgage balance is large, most Chapter 13 debtors will not be able to retire the debt in full through the plan; thus, curing default and maintaining payments consistent with the original loan is the only realistic alternative even if the home mortgage claim is subject to modification. The debtor cannot modify the mortgage to provide for payments that exceed the life of the plan, except to cure default(s) and reinstate the original terms of a loan that would extend longer than the plan by contract.

1 LUNDIN, *CHAPTER 13 BANKRUPTCY* § 4.47, at 4–65 (footnote omitted).

■ Curing of a default under a long term mortgage is clearly acceptable under the Bankruptcy Code. More importantly, if a chapter 13 debtor chooses to employ the Code's "cure and maintenance" provision, the three to five year limitation on plan payments of § 1322(d) has no application because § 1322(b)(5) specifically permits payments on a secured claim beyond the final payment under the plan. [11] However, as a tradeoff, besides allowing a debtor to cure prepetition defaults, all other terms and provisions from the original mortgage contract are reinstated and must remain unchanged. [12]

Any proposed change in the contractual rate of interest and/or extension of payments beyond the original maturity date, similar to what has been proposed by

---

10. The "within a reasonable time" language of § 1322(b)(5) has been interpreted in this circuit to permit chapter 13 debtors to cure arrearage claims over the life of the plan, whether the term of the plan be for three or five years. See *Sapos v. Provident Inst. of Sav.*, 967 F.2d at 926 (citations omitted) (Section 1322(b)(5) "requires that arrearages be cured 'within a reasonable time,' and this has been interpreted as meaning within the duration of the chapter 13 plan, which may not exceed five years.").

11. *PNC Mortgage Co. v. Dicks*, 199 B.R. 674, 683 (N.D.Ind.1996) (Section 1322(d)'s statutory limitation does not apply when a default is being cured pursuant to § 1322(b)(5)).

12. See, e.g., *Tavella v. Golden Nat'l Mortgage Co. (In re Tavella)*, 191 B.R. 637, 641 (Bankr. E.D.Pa.1996) ("Under § 1322(b)(5), all of the provisions of a note or contract remain in full force and effect."). The *Tavella* court also cited the Third Circuit Court of Appeals decision in *In re Capps*, 836 F.2d 773, 777 (3d Cir.1987), wherein the circuit court concluded that "[c]ure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts."

Debtor, does not constitute "maintenance of payments." Courts have concluded that "[a] change in the amount of the monthly payments hardly constitutes 'maintenance of payments.' The phrase connotes an absence of change. If the payments are changed, sections 1322(c) [now § 1322(d) ] and 1325(a)(5) both require that the [payments] be completed over the life of the plan, which cannot exceed five years." *In re McGregor*, 172 B.R. 718, 721 (Bankr. D.Mass.1994).[13]

■ Another problem chapter 13 debtors who are attempting to cure and maintain debts may encounter is that § 1322(b)(5) specifically applies to certain types of claims, i.e., long term debts.

> The limitation in § 1322(b)(5) to long-term debts is a problem for a debtor with a real estate secured loan protected from modification by § 1322(b)(2) that is payable on demand, that has matured or will mature during the proposed life of the plan, or that contains a balloon requiring payment in full before the last payment is due under the plan.... If that date is sooner than the date on which the final payment is due under the proposed Chapter 13 plan, then the loan does not fit the description in § 1322(b)(5), and curing default and maintaining payments under § 1322(b)(5) is not available.

1 LUNDIN, *CHAPTER 13 BANKRUPTCY* § 4.50, at 4–70.[14] Therefore, a debtor must remember that § 1322(b)(5)'s "cure and maintenance" provision applies exclusively to those debts which by their own terms extend beyond the life of the plan. See *In re Dinsmore*, 141 B.R. at 504; *In re Schaf-*

*er*, 99 B.R. at 354 (section 1322(b)(5) "does not apply to short-term obligations which would, by their terms, become due before the last plan payment is due.")

■ In the instant case, Debtor's mortgage with LaSalle matured pre-petition. Therefore, Debtor cannot cure this mortgage, however, he may modify the secured claim pursuant to § 1322(b)(2) and pay the allowed claim in full through his chapter 13 plan. The "cure and maintenance" option is not available to Debtor because the last payment on LaSalle's loan was due before the first payment under his chapter 13 plan. All of the Debtor's other mortgage liabilities can be dealt with by the "cure and maintenance" provisions of § 1322(b)(5), if the Debtor so chooses.

### CONCLUSION

This court concludes that the Debtor has two choices for treating the secured mortgage debts in his chapter 13. First, Debtor may modify the rights of the Lenders by reducing the interest rates from the original contract rate, but in order to do so, Debtor must provide for full payment of the allowed secured claims within the life of his chapter 13 plan. The other alternative is for Debtor to cure all pre-petition defaults through his five year plan and reinstate the original contracts by maintaining all future payments in accordance with the original terms of the mortgages.

---

13. Although the court in *In re McGregor* refused to confirm the debtor's plan which sought to modify the original contract terms, unless the plan provided for full payment of the allowed secured claim during the life of the plan, the court concluded that "[t]he Debtor may nevertheless take advantage of [§ ] 1322(b)(5) by keeping the same 10.5% contract rate [of interest] and making the same payments of principal and interest called for by the note during the life of the plan and during such further period of time as is necessary to have the total principal payments equal the amount of the secured

claim as valued by this court." *In re McGregor*, 172 B.R. at 721.

14. Judge Lundin stated that "Section 1322(b)(5)—the power to cure defaults and maintain payments 'notwithstanding' the prohibition of modification in § 1322(b)(2)—is only available with respect to 'long-term' claims on which the last payment is due after the date on which the final payment under the plan is due." 1 LUNDIN, *CHAPTER 13 BANKRUPTCY* § 4.49, at 4–69 (footnote omitted).