**In re Gary W. ROGEL and Marcia L. Rogel, Debtors.**

**Gary W. Rogel and Marcia L. Rogel, Movants,**

v.

**Deutsche Bank National Trust Company, Respondent.**

**No. 08–25569JAD.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 9, 2010.

---

Michael S. Geisler, Monroeville, PA, for Debtors.

## MEMORANDUM and ORDER
## of COURT

JEFFERY A. DELLER, Bankruptcy Judge.

The matter before the Court is the Debtors' *Objection to Claim of Deutsche Bank National Trust Company* (the "Objection"). The matter is a core proceeding in which this Court has proper subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B), (K), and (O). This *Memorandum and Order of Court* constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

Following negotiations by the parties, the only remaining issue raised in the Debtors' Objection is whether Deutsche Bank National Trust Company ("Deutsche Bank") is entitled to reimbursement for escrow advances to pay real estate taxes and insurance (the "Escrow Advances"). The Escrow Advances were made following the entry of the foreclosure judgment and prior to the filing of the Debtors' pending bankruptcy petition. At a January 13, 2010 hearing, the parties asked to brief the issue of whether Deutsche Bank may include such sums as a part of its claim. The briefs have been submitted, and the matter is now ripe for adjudication.

By way of background, Gary W. and Marcia L. Rogel (the "Debtors") are the owners of real property known as 125 Donaldson Road, Gibsonia, PA 15044, (the "Property"). (*See* Case No. 08–25569JAD, Dkt. # 1).[1] On September 24, 2004, the Debtors executed a mortgage (the "Mort-

---

1. All Dkt. references refer to Case. No. 08– 25569JAD, unless otherwise specified.

gage") on the Property with New Century Mortgage Corporation, securing a Note in the principal amount of $187,000.00. (*See* Claim #5, Case. No. 08–25569JAD, Part 2).

At some point the Mortgage was assigned to Deutsche Bank and the Debtors allegedly fell behind on their payments. On April 17, 2006, Deutsche Bank obtained a default judgment in mortgage foreclosure. (*See* Dkt. #66, p. 2).

Beginning June 30, 2006, the Debtors filed a series of chapter 13 petitions, staying execution of the foreclosure judgment.[2] (*See* Dkt. #1). The cases were dismissed for various reasons. On August 25, 2008, the Debtors filed this proceeding. Deutsche Bank filed a proof of claim in the amount of $278,095.79 (with $94,930.87 in arrears). Deutsche Bank attached an itemization to its proof of claim, showing "Pre–Petition Escrow Advances" in the amount of $25,740.57.[3] (*See* Claim #5, Case. No. 08–25569JAD).

The Debtors proposed an amended chapter 13 plan dated August 24, 2009, (the "Amended Plan"), which seeks to continue paying the mortgage through the plan and to cure the pre-petition delinquency on the Mortgage held by Deutsche Bank. (*See* Dkt. #48). The Amended Plan lists the monthly payment amounts due on the Mortgage and further lists Deutsche Bank's arrears amount as disputed. (*See id.*). On September 2, 2009,

the Debtors filed the Objection. (Dkt.# 52).

As the Debtors are objecting to Deutsche Bank's proof of claim, this Court will first consider the shifting burden of proof for claims brought in bankruptcy proceedings under 11 U.S.C. § 502(a). A proof of claim is deemed allowed unless a party in interest timely objects. 11 U.S.C. § 502(a). The claimant has the initial burden to "allege facts sufficient to support the claim." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir.1992). Once a properly supported claim has been appropriately filed, the burden shifts to the objector to overcome the prima facie validity of the claim. *Id.* "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Id.* at 174. (citations omitted).

In the instant matter, the Debtors' Objection requested an accounting of the payment amounts resulting in the Escrow Advances figure. In response, Deutsche Bank filed an *Escrow Disbursements* spreadsheet, which provided the amounts, transaction dates, payee information, and check numbers outlining the expenditures that comprise the Escrow Advances figure. (*See* Dkt. #66, "Exhibit B," *Escrow Disbursements*). There appears to be no dispute that Deutsche Bank has alleged suffi-

---

**2.** Case No. 06–23017JAD was filed 6/30/2006 by Marcia Rogel, dismissed 7/28/2006; Case No. 06–25579 was filed 11/5/2006 by Marcia Rogel, dismissed 2/1/2007; Case No. 07–22689 was filed 4/28/2007 by the Debtors, dismissed 9/20/2007; and Case No. 07–27645 was filed 12/1/2007 by the Debtors, dismissed 6/3/2008.

**3.** Deutsche Bank lists an amount of $25,740.57 in its Itemization of Claim. The

Debtors purport the amount disbursed since the date of judgment is $24,615.92. However, the correct sum of the amounts in the *Escrow Disbursements* spreadsheet, provided by Deutsche Bank, is actually $25,740.63. (*See* Dkt. #66, "Exhibit B," *Escrow Disbursements*). (A total of $29,463.92 was paid by Deutsche Bank for taxes and insurance; however, $3,723.29 of this amount was paid following the filing of the instant case).

cient facts to support its claim for Escrow Advances.

■ What remains is that the Debtors object to the Escrow Advances on legal grounds. In support, the Debtors argue that the case of *Stendardo v. Federal Nat'l Mortgage Ass'n (In re Stendardo)*, 991 F.2d 1089 (3d Cir.1993), controls. As such, the Debtors argue that Deutsche Bank's claim for the Escrow Advances did not survive merger of the Mortgage into the foreclosure judgment. Conversely, Deutsche Bank argues that because the Debtors are seeking to cure the Mortgage default through the terms of their proposed plan, *Stendardo* is inapplicable.

In *Stendardo* the Third Circuit held that a mortgagee was not entitled to post-judgment expenses for taxes and insurance. *Id.* at 1097. In its analysis, the Court found that when a mortgagee obtains a judgment in foreclosure, the "terms of the mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties." *Id.* at 1095 (citations omitted).

While the Debtor cites *Stendardo* for its correct holding, the fact pattern of *Stendardo* is inapposite to facts in the instant matter. Specifically, in *Stendardo*, the debtors had not stated their intent to cure the default and reinstate the mortgage as is the case here. This distinction is material.

Section 1322(b)(5) of the Bankruptcy Code allows a debtor, to retain its encumbered property by curing any defaults and reinstating the original mortgage. *See* 11 U.S.C. § 1322(b)(5). *See also Tavella v. Golden Nat'l Mortgage Co. (In re Tavella)*, 191 B.R. 637, 641–42 (Bankr.E.D.Pa.1996) ("[T]he Debtor can reinstate the original notes and mortgages contracts by resuming payments under the terms of the original notes and mortgages while curing the arrearages with appropriate payments within the life of the Plan as provided in § 1322(b)(5)").

Section 1322(b)(5) states, in pertinent part, that a chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." [4] 11 U.S.C. § 1322(b)(5).

The Debtors' Amended Plan clearly indicates the Debtors' intent to cure the pre-petition arrears on the Mortgage according to the provisions of 11 U.S.C. § 1322(b)(5). The Amended Plan contemplates making the required monthly mortgage payment of $1,586.06 and purports to cure $40,000.00 in pre-petition arrears.[5] In fact, at the hearing held January 13, 2010, Debtors' counsel admitted that the Debtor's intend to cure and reinstate the Mortgage.[6] (*See* Audio Recording of

---

4. Courts have interpreted the phrase "within a reasonable time" to mean during the life of the plan. *In re Hussain*, 250 B.R. 502, 510 n. 10 (Bankr.D.N.J.2000) (citing *Sapos v. Provident Inst. of Sav.*, 967 F.2d 918, 926 (3d Cir.1992)).

5. Upon review, this Court notes the Amended Plan's estimated amount of "Pre-petition arrears to be cured" is not accurate. By multiplying the monthly plan payment amount of $2,200.00 over the life of the plan (60

months), and subtracting the total amount required to satisfy the monthly mortgage payment ($95,163.60), only $36,836.40 of plan funding is available to cure arrears.

6. In addition, the Court notes that all of the prior plans submitted by the Debtors also contemplated maintaining the mortgage payments and curing the amount of pre-petition arrears. (*See* Dkt. # 66, Exhibit C).

Hearings, Courtroom D, January 13, 2010 (10:26 AM–10:27 AM)).

■ The cure provision of 11 U.S.C. § 1322(b)(5) allows debtors that "do not have the financial wherewithal" to satisfy the entire amount of their mortgage obligation within the life of their plan, the opportunity to save their real property. *In re Hussain,* 250 B.R. 502, 510 (Bankr. D.N.J.2000). As a tradeoff for this benefit "all other terms and provisions from the original mortgage contract are reinstated and must remain unchanged." *Id.*

The principle that the terms of the mortgage note or contract are reinstated when a debtor elects to cure pursuant to § 1322(b)(5) is well-established within the Third Circuit. *See e.g., In re Willett,* 196 B.R. 732, 733–34 (Bankr.W.D.Pa.1996) (holding that when debtors elect to cure and reinstate their mortgage pursuant to § 1322(b)(5) they "bec[ome] liable for interest and all other charges which accrue under the terms of the [m]ortgage, just as if no judgment were ever taken."); *Tavella,* 191 B.R. at 641 ("Under § 1322(b)(5), all of the provisions of a note or contract remain in full force and effect."); *In re Winogora,* 209 B.R. 632, 636 (Bankr.D.N.J. 1997) ("If a mortgage is reinstated . . . all provisions of such mortgage including authorization for advances for taxes and insurance are also reinstated"); *Appeal of Capps,* 836 F.2d 773, 777 (3d Cir.1987)

("Cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts.").[7]

Following the 1994 Amendments to the Bankruptcy Code, this well-established principle was codified in 11 U.S.C. § 1322(e) which states "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e) (2010); *see also Smiriglio v. Hudson United Bank,* 98 Fed. Appx. 914, 915 (3d Cir.2004) ("every bankruptcy court to consider the matter appears to have agreed or assumed that 'when a debtor seeks to cure a prepetition payment default over the life of a Chapter 13 plan . . . the amount of the arrearage must be determined in accordance with the underlying agreement and applicable nonbankruptcy law . . .' ") (quoting *In re Plant,* 288 B.R. 635, 641 (Bankr.D.Mass. 2003)).

As the Debtors concede they are seeking to cure and reinstate the mortgage pursuant to 11 U.S.C. § 1322(b)(5), the terms of the Mortgage (as the "underlying agreement") shall control the amount necessary to cure the default.

■ It is clear from the terms of the Mortgage that the Escrow Advances are to be paid by the Debtors.[8] Section 3 of the Mortgage explicitly states the Debtor

---

**7.** The holding in *Capps* was later abrogated by the Supreme Court decision in *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), which allowed federal law to trump the terms of a mortgage note when determining the amount necessary to cure an arrears claim. Congress responded by passing 11 U.S.C. 1322(e), codifying the principle that the terms of the underlying agreement and applicable state law should determine the amount necessary to cure a default. *See In re Lammy,* 356 B.R. 168, 172 n. 6 (Bankr. E.D.Pa.2006). In explaining the purpose of the 1994 Amendments, Congressman Brooks

explained the committee's intention was that "a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred." 140 Cong. Rec. H10752–01, 1994 WL 545773, at *H10770 (Oct. 4, 1994).

**8.** The pertinent parts of the Mortgage provide as follows:

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:

shall pay Deutsche Bank for "taxes and assessments and other items which can attain priority over this Security Instrument...." (*See* Dkt. # 66, "Exhibit D," *Mortgage*, p. 5). Section 3 also states the Debtors are responsible for paying "premiums for any and all insurance required by [Deutsche Bank]." (*See id.*). These provisions clearly indicate that the amounts expended to pay taxes and to continue hazard insurance on the Property are appropriately included in the arrears pursuant to 11 U.S.C. § 1322(e).[9]

■■ Clear precedent establishes that when the Debtors elected to cure the Mortgage default pursuant to § 1322(b)(5), the Debtors became "liable for interest and all other charges which accrue under the terms of the Mortgage, just as if no judgment were ever taken." *Willett*, 196 B.R. at 733–34. Further, it is clear the terms of the Mortgage allow for the Es-

crow Advances to be charged to the Debtors. As a result, this Court holds the Debtors have failed to overcome the prima facie validity of Deutsche Bank's claim for Escrow Advances.[10]

**WHEREFORE,** this **9th** day of **March, 2010,** the Court hereby **ORDERS, ADJUDGES** and **DECREES** that:

(1) The Debtors' *Objection to Claim of Deutsche Bank National Trust Company* is **DENIED.**

(2) Deutsche Bank's claim for Escrow Advances is allowed in the amount of $25,740.63.

(3) The Debtors shall file an amended plan consistent with this *Memorandum and Order of Court* within sixty (60) days.

---

(a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property ... (c) premiums for any and all insurance required by Lender under Section 5 ...

...

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the terms "extended coverage," and any other hazards ...

(Dkt. # 66, "Exhibit D," *Mortgage* ).

9. In addition, both Section 9 and Section 14 of the Mortgage appear to fix liability on the Debtors for the payment of the Escrow Advances. Section 9 provides that in the event of a default or any proceeding impacting the rights of mortgagee, "[Deutsche Bank] may do and pay for whatever is reasonable or appropriate to protect [its] interest in the Property ... Any amounts disbursed by [Deutsche Bank] under this Section 9 shall become additional debt of Borrower ..." (*See* Dkt. # 66, "Exhibit D," *Mortgage*, pp. 8–9). Further, Section 14 allows Deutsche Bank to charge the Debtors a fee "for services performed in connection with Borrower's de-

fault, for the purpose of protecting Lender's interest in the property and rights under this Security Instrument ..." (*See id.* at p. 11).

10. In the alternative, Deutsche Bank argues the Court should use its equitable powers pursuant to 11 U.S.C. § 105(a) to award reimbursement for the Escrow Advances because the Debtor has been "unjustly enriched through the bad-faith abuse of the bankruptcy process in delaying the foreclosure action through repetitive bankruptcy filings." (*See* Dkt. # 66, p. 2). Pursuant to the Third Circuit's holding in *Stendardo*, in order to succeed on a claim of "unjust enrichment" the mortgagee must show 1) enrichment to the debtors; and 2) an injustice to the mortgagee if recovery for the enrichment is denied. *Stendardo*, 991 F.2d at 1099 (citations omitted). As this Court has found that Deutsche Bank is entitled to the Escrow Amounts, due to the reinstatement of the Mortgage terms, it is not required to reach the nettlesome issue of whether the Debtors are "unjustly enriched" or receive a direct or incidental benefit when a mortgage is reinstated pursuant to 11 U.S.C. § 1322(b)(5).